JULIA KLEM BURKARD, Appellant, *v.* FRANK P. CROUCH,
Respondent.

EJECTMENT — ESTOPPEL.  Where it appears in an action of ejectment
that the property in question had been devised to a testator's widow for life
with remainder to the plaintiff, his daughter; that it had been sold by
executors under a power of sale contained in the will, providing that it
might be sold with the assent of the widow and the proceeds divided
equally between her and the children; that upon the accounting of the
executors, the plaintiff, who at that time was a minor, appeared by special
guardian, and the surrogate directed that her portion of the proceeds be
invested until she came of age; that upon her coming of age she applied
for an order directing its payment to her, which was granted; that no claim
was made that there was any mistake upon her part in receiving or retain-
ing the money or that she was ignorant of the situation of the property;
that she knew that the purchasers had erected valuable buildings on it at
large expense, and for nine years she looked on while they were in posses-
sion, claiming title, paying taxes and making extensive improvements,
under such circumstances, she is estopped from maintaining the action.

*Burkard* v. *Crouch,* 53 App. Div. 650, affirmed.

(Argued December 12, 1901; decided January 14, 1902.)

APPEAL from a judgment of the Appellate Division of the
Supreme Court in the fourth judicial department, entered
August 13, 1900, affirming a judgment in favor of defendant
entered upon a verdict directed by the court.

The nature of the action and the facts, so far as material,
are stated in the opinion.

*George D. Reed* for appellant.  The will devised in fee
simple forever the lot in question of plaintiff subject only to
the life estate of the widow and not subject to any power
thereinafter created.  The title vested in plaintiff at the death
of the testator, and she having never conveyed it, is now the
owner.  (Gerard on Titles, 112; L. 1896, ch. 547, art. 2, §§ 21,
30, 54; *Thomson* v. *Hill,* 87 Hun, 114.)  The testator did not
rescind the devise to plaintiff of lot No. 1, and nothing short
of a positive rescission will suffice to destroy the gift.  (*Rose-
boom* v. *Roseboom,* 81 N. Y. 357; *Taggart* v. *Murray,* 53
N. Y. 233; *Field* v. *Mayor of N. Y.,* 38 Hun, 592; *Banzer*

v. *Banzer*, 156 N. Y. 435; *Goodwin* v. *Coddington*, 154 N. Y. 286; *Washbon* v. *Cope*, 144 N. Y. 297; *Byrnes* v. *Stilwell*, 103 N. Y. 460; *Moffett* v. *Elmendorf*, 152 N. Y. 487; *Benson* v. *Corbin*, 145 N. Y. 359; *Freeman* v. *Coit*, 96 N. Y. 69.) The intent of the testator is the prevailing consideration in applying all rules of construction, and it is evident that testator intended to give lot No. 1 to plaintiff "in fee simple forever," for he said so, and to hold otherwise would be to do violence to the plain words and clear intent. (Redfield on Wills, 433, 435, § 30; 11 Am. & Eng. Ency. of Law, 372; *Mason* v. *Jones*, 2 Barb. 230; *Lytle* v. *Beveridge*, 58 N. Y. 592; *Ritch* v. *Hauxhurst*, 114 N. Y. 515; *Hopkins* v. *Kent*, 145 N. Y. 367; *Sweet* v. *Chase*, 2 N. Y. 73; *Norris* v. *Beyea*, 13 N. Y. 282; *Taggart* v. *Murray*, 53 N. Y. 236.) In construing the will the rule that where its latter part is inconsistent with the prior part the latter will prevail, applies only where it is impossible to reconcile the two provisions with each other, and will never be resorted to until every attempt to give effect to both parts is exhausted. (Gerard on Titles, 416, 417; *Byrnes* v. *Stilwell*, 103 N. Y. 453; Redfield on Wills, 444, 446, 447, § 32; Underhill on Wills, § 359; *Schermerhorn* v. *Negus*, 1 Den. 448; *Converse* v. *Kellogg*, 7 Barb. 596; *Martin* v. *Ballou*, 13 Barb. 128; *Jackson* v. *Robins*, 16 Johns. 537; *McLean* v. *McDonald*, 2 Barb. 534; *Bradstreet* v. *Clark*, 12 Wend. 602; *Button* v. *McCauley*, 38 Barb. 413; *Norris* v. *Beyea*, 13 N. Y. 286.) The title to lot 1 vested in fee simple forever in plaintiff at the death of testator, and never vested in executors, consequently any conveyance made by executors could not cut off plaintiff's fee, and the deed from executors to defendant or his grantor is void and does not attempt to convey the fee of lot No. 1, and does not cover plaintiff's title in fee. (9 Am. & Eng. Ency. of Law [2d ed.], 107; *Price* v. *King*, 44 Kans. 639; Rawle on Covenants, §§ 33–35; *Hiss* v. *McCabe*, 45 N. D. 77; *Bostwick* v. *Beach*, 31 Hun, 343; *Ramsay* v. *Wandell*, 32 Hun, 281; *Hertzell* v. *Barber*, 69 N. Y. 1; *Allen* v. *De Witt*, 3 N. Y. 276.) Plaintiff is not estopped from claiming to

be the owner of lot 1, because the executors sold it and the avails thereof were paid to plaintiff under proceedings in Surrogate's Court. (*Kitzmiller* v. *Rensselaer*, 10 Ohio St. 63; Bigelow on Estoppel [5th ed.], 334, 337, 354; 11 Am. & Eng. Ency. of Law [2d ed.], 392, 393, 394; *Sunderland* v. *Struthers*, 47 Penn. St. 411; *Millard* v. *McMullen*, 68 N. Y. 346; *Glasgow* v. *Baker*, 72 Mo. 441; *Wright* v. *De Graft*, 14 Mich. 164; *Doe* v. *Glenn*, 1 Ad. & El. 49; *Smith* v. *Penny*, 44 Cal. 162; *Hall* v. *Matthews*, 68 Ga. 490; *Goldsmith* v. *Coleman*, 57 Ga. 425; *Trentman* v. *Eldridge*, 98 Ind. 525.) The executors did not sell plaintiff's title and defendant did not purchase it. (Mecham on Agency, §§ 110, 127; Bigelow on Estop. 457; 19 Am. & Eng. Ency. of Law, 970, n. 5; 1 Am. & Eng. Ency. of Law [2d ed.], 1187, 1188; *Collins* v. *Suau*, 7 Robt. 623; *Hamlin* v. *Sears*, 82 N. Y. 330; *Weed* v. *Weed*, 94 N. Y. 243; *Anderson* v. *Anderson*, 112 N. Y. 104; *Mellen* v. *Mellen*, 139 N. Y. 217; *Horton* v. *Cantwell*, 108 N. Y. 255; *Bailey* v. *Briggs*, 56 N. Y. 407; *Townsend* v. *Mayor, etc.*, 77 N. Y. 542.)

*James Breck Perkins* for respondent. Even if the executors had no power to sell the plaintiff has ratified their act. (Bigelow on Estoppel, 678; *Boyer* v. *East*, 161 N. Y. 580.) The plaintiff is estopped from questioning the validity of the sale. (*Shimmel* v. *Moss*, 30 Misc. Rep. 257; *Matter of Mount*, 27 Misc. Rep. 411; *Mills* v. *Hoffman*, 92 N. Y. 181; *Matter of McCahill*, 29 Misc. Rep. 450; *Kager* v. *Brenneman*, 47 App. Div. 63.) The executors had a power of sale. (*Sherrer* v. *Bartlett*, 45 App. Div. 135; *Matter of Miller*, 161 N. Y. 71; 3 Jarman on Wills [5th Am. ed.], 705.)

O'BRIEN, J. This is an action to recover a parcel of real estate in the city of Rochester, of which the defendant was in possession, claiming title. It is undisputed that the plaintiff's father, Bernhard Klem, who died on the twenty-first of January, 1879, leaving a last will and testament, was the owner

26

of this land and the common source of title.   The lot in con-
troversy is known as lot number one, as shown upon a map
made by the testator in his lifetime, subdividing a tract con-
taining about six and three-quarter acres, known as the
homestead lot.   The plaintiff claims to be the owner of this
lot as devisee under her father's will, and the defendant
claims title under a conveyance of the same by the executors
of the will.

By the first clause of the will the testator devised this lot
to his widow during her natural life, and she died on the
eighteenth of September, 1895, and this action was com-
menced on the seventh of December, 1899.   By the fourth
clause of the will the lot was devised to the plaintiff from
and after the death of her mother, to have and to hold the
same in fee simple forever.   Reading these two provisions of
the will together, the plaintiff had a vested remainder under
her father's will in the land in controversy, and if there were
no other provisions of the will that affected the title the plain-
tiff would undoubtedly be vested with the title to the prop-
erty.   It was a holographic will, containing twenty-one sepa-
rate clauses or provisions.   The twentieth clause is as follows :
" I hereby authorize, empower and direct my said executors to
sell and convey the real estate which I have devised to my
said wife for her use and benefit during her life, as mentioned
in clause number one, however, upon the condition that my
said wife gives her consent to such sales ; and if any sales of
real estate should be made as aforesaid, then I direct and
authorize my executors to divide the avails of such sale or
sales among all my children equally, share for share alike.
My said wife is to receive an equal share with one of my chil-
dren."   Reading these three provisions together, the question
is, whether the testator conferred upon his executors the power
to sell and dispose of this lot.   In other words, whether the
devise of the remainder to the plaintiff is qualified and affected
by the power of the executors to sell with the consent of the
widow.   They did sell the land, and the widow joined in the
deed, thus expressing her consent in an effective manner.

The testator, it seems, was twice married and he left surviving him seventeen children, ten children of the first wife and seven of the second; and it is apparent from the whole scheme of the will that he intended, after providing for the widow, to divide his property equally among each of the two sets of children, without favoring one more than another. It seems that the plaintiff was the youngest child, and that she and two or three of the other children were minors at the time of the death of the testator. The power of sale to the executors is mandatory, but it could not be put into operation without the consent of the widow, and, hence, she was the real party to determine whether there should be a sale or not. The homestead, so called, or at least that part of it on one side of a certain street or avenue, had been subdivided into seven separate lots designated and numbered on the map referred to. It was suburban property, but the city was rapidly growing and extending in the locality, and various improvements such as the paving and grading of streets, the construction of sewers, and, perhaps, some other municipal work, rendered it quite probable that these lots would be subjected to large local assessments; and it is reasonable to assume from the various provisions of the will that this was foreseen by the testator at the time that he executed the will.

The learned counsel for the plaintiff contends that, although the power of sale given to the executors was broad and comprehensive in its terms, yet it could not apply to the lot in question, which had been devised to the plaintiff after the death of her mother by previous provisions of the will, and he invokes the doctrine which is well settled that the clear devise to the plaintiff, expressed in the fourth clause of the will, cannot be cut down or affected by the power contained in the twentieth clause. There is no doubt that that is the general rule, but the meaning of every will must after all be determined by its own peculiar provisions, and in this case we find the testator in various clauses of his will devising to his children in remainder designated lots or parcels of land which were included in the general devise to his widow for life.

And then follows near the end of the will the general power, which in terms authorizes the executors, at the widow's election, to convert this same land into money by a sale. He doubtless intended that these minor children should have the several parcels of land devised to them by the will, unless the mother, who was a comparatively young woman, should consider it to be for the best interests of these children to sell the lots and convert them into money. We think that the will, when fairly construed with reference to the situation of the property at the time it was made and the age of the children, conferred authority upon the widow to invoke the mandatory authority to the executors to sell. The rule invoked by the learned counsel for the plaintiff, that the devise of the estate in remainder to the plaintiff, contained in the fourth clause, cannot be cut down or affected by the power of sale in the twentieth clause, is one of construction. Of course it is possible to do it, and all that the courts require in such a case is that the testator should have expressed his intention in clear language, and the language conferring the power in this case is clear and comprehensive. When all the provisions of the will are considered, the most that can be said is that the question is perhaps not entirely free from difficulty, but since every will must be construed with reference to its own provisions and the peculiar facts and circumstances existing at the time it was made, it is reasonable to conclude that the power applied to the lot in question.

But however that may be, we think that there is another feature of the case which disposes of the plaintiff's claim and is sufficient to control the decision. At the close of all the testimony both parties asked the trial court to order a verdict, and the court denied the plaintiff's motion in that respect and directed a verdict for the defendant. If there were any questions of fact in the case, or any necessary inferences to be drawn from facts, it was within the province of the trial judge to do it, and, hence, all these questions are settled by the action of the court under the circumstances in directing a verdict. It appears that the plaintiff was born on the seventh

day of July, 1870, and arrived at the age of twenty-one years on the seventh day of July, 1891. It also appears that on the seventh day of May, 1884, the executors and the widow united in a deed to the defendant's father of the seven lots, already referred to on the map of the homestead property, for the consideration expressed in the deed of $13,160. About three years thereafter the executors having applied to the surrogate of the county to render their account and for their discharge, the children and widow were cited, including the plaintiff, and a special guardian was appointed for her and the other children, who were minors. This conveyance included the lot in question. The testator died possessed of a considerable estate, both real and personal, amounting in all to about $150,000. The executors rendered a full account of the proceeds of all the personal property and of all the real estate that had been converted into money, and the surrogate proceeded to hear the parties and make distribution of the assets in the hands of the executors. The plaintiff was a party to this proceeding, and one of the things which the surrogate necessarily decided was the question whether the thirteen thousand dollars, which the executors received from the homestead lots, were assets in the hands of the executors for distribution to the legatees and devisees under the will. He held that they were, since he directed they be distributed under the terms of the will to the parties entitled thereto, including the plaintiff. But as some of the children were still minors, the surrogate, after determining the respective rights and interests of the legatees and devisees under the will, directed that the fund be invested by the county treasurer. On the eighth day of July, 1891, the day after the plaintiff became of full age, she applied by petition to the surrogate for an order directing the payment to her of the distributive share of the estate given to her by the decree, and upon her application the surrogate ordered distribution and payment to her of her share, amounting with accumulated interest to $10,780.00, and thus the plaintiff received the proceeds of the sale of the lot in controversy. There is no claim that there

was any mistake on the part of the plaintiff in receiving and retaining this money, or that she was ignorant of the situation of the property disposed of by her father's will. The defendant, or his predecessor in title, had erected buildings on this land at an expense of thirty thousand dollars. The plaintiff not only knew this fact, but looked on for nine years subsequently while the defendant, or those from whom he derived title, were in the possession of the property, claiming title, paying taxes and making extensive improvements. Under these circumstances, we think it must be held that the plaintiff ratified the sale even if it was in any essential particular defective. And it may also be said that the proceedings and decree before the surrogate upon the accounting, the subsequent application of the plaintiff for her distributive share of the estate under the will and her apparent acquiescence in the possession and title of the grantee under the executors' deed, estop her from maintaining this action. The plaintiff was represented by a special guardian in the accounting proceedings before the surrogate, and that court necessarily had to decide whether the fund of thirteen thousand dollars, the proceeds of the sale of the land, were assets in the hands of the executors or not, and the power to construe the will in such a case is recognized as incidental to the power to direct distribution. Hence the authority of the executors to convert the land in question into money under the power contained in the will was one of the questions determined by the probate court in the proceedings for an accounting. If the decree directing distribution was not under these circumstances in itself an estoppel, the receipt and retention by the plaintiff of the fruits of the judgment, with knowledge of all the facts, it is safe to say, was. Therefore, in any view that may be taken of the case, the decision of the court below was correct, and so the judgment must be affirmed, with costs.

GRAY, LANDON and WERNER, JJ. (HAIGHT and CULLEN, JJ., on last ground stated in opinion), concur; PARKER, Ch. J., absent.

Judgment affirmed.