### CHILDS v. CHILDS.

(Supreme Court, ·Appellate Division, ·First Department. May 31, 1912.)

1. Pleading (§ 176*)—Reply—Denial on Information and Belief.
    Plaintiff's denial in his reply of knowledge or information sufficient to form a belief as to the facts set forth in the answer was purely evasive and not to be considered, where such facts were all matters of public record and had been judicially considered in a proceeding in which the plaintiff was a party and of which he must necessarily have knowledge.
    [Ed. Note.—For other cases, see Pleading, Cent. Dig. §§ 343, 345–353; Dec. Dig. § 176.*]

2. Pleading (§ 345*)—Judgment on Pleading.
    Where the answer, in a beneficiary's action against the trustee under a will, set up surrogate's decrees settling the trustee's accounts and absolutely barring the plaintiff's right to maintain the action, and the plain-

---

*For other cases see same topic & § number in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

tiff's reply denied the allegations of the answer as to what the accounts settled by the decrees contained, but admitted that the decrees had been duly entered and remained in force, and made no charge of fraud or misrepresentation in obtaining the decrees, or that plaintiff did not have knowledge of the matters complained of prior to the entry thereof, no issue was raised by the reply, and the defendant was entitled to judgment on the pleadings.

[Ed. Note.—For other cases, see Pleading, Cent. Dig. §§ 1055–1059; Dec. Dig. § 345.*]

3. COURTS (§ 201*)—SURROGATE'S COURT—JURISDICTION—WILLS.
The Surrogate's Court has power to construe a will, incidentally to an executor's and trustee's accounting, so far as necessary to determine how the estate should be distributed, and to determine what property a trustee holds or for what he is liable to account.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 86, 87; Dec. Dig. § 201.*]

4. TRUSTS (§ 327*)—ACCOUNTING BY TRUSTEE—JUDGMENT—CONCLUSIVENESS—COLLATERAL ATTACK.
Surrogates' decrees, entered upon proper jurisdiction and settling a trustee's accounts, could not be attacked collaterally, but were conclusive upon a beneficiary of the will, not only as to what the trustee was chargeable with, but also as to the legality of sales made by him.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. § 487; Dec. Dig. § 327.*]

5. TRUSTS (§ 204*)—ADMINISTRATION—SALES—ATTACK—ESTOPPEL.
Where a beneficiary under a will, with knowledge of all the facts, accepted his share of the proceeds of sales by the trustee, he thereby ratified the sales and was estopped to question their validity, especially where he did not return the proceeds received by him.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. §§ 277–279; Dec. Dig. § 204.*]

Appeal from Special Term, New York County.

Action by Irving W. Childs against Eversley Childs, individually and as trustee under the will of William H. Childs, deceased. From an order denying defendant's motion for judgment on the pleadings, he appeals. Reversed, and motion granted.

See, also, 134 App. Div. 948, 118 N. Y. Supp. 1098; 140 App. Div. 906, 125 N. Y. Supp. 1115; 144 App. Div. 168, 128 N. Y. Supp. 782.

Argued before INGRAHAM, P. J., and McLAUGHLIN, LAUGHLIN, MILLER, and DOWLING, JJ.

John M. Bowers, of New York City, for appellant.

Frederick H. Clarke, of New York City, for respondent.

McLAUGHLIN, J. Action to construe a will, to compel a retransfer to a trust estate of certain property alleged to have been wrongfully disposed of, to compel the trustee to account, and to have him removed and another person appointed in his place. After the service of a reply to new matter set up in the answer, a motion was made by the defendant for judgment on the pleadings. The motion was denied, and the appeal is from that order.

The reply admits that since the commencement of the action the trust created by the will of the testator has terminated and that the trustees have settled and by surrogates' decrees have been discharged.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

The only question, therefore, necessary to be considered is whether the plaintiff, notwithstanding such decrees, upon the facts alleged is entitled to any relief.

The amended complaint alleges that the plaintiff's father died on the 25th of April, 1898, leaving a will by which the plaintiff was bequeathed $35,000, a one-fourth interest in the business of the Mica Roofing Company—a firm composed of the testator and the defendant —and a one-half interest in the residuary estate after the death of the plaintiff's mother; that the $35,000, the one-fourth interest in the Mica Roofing Company, and the entire residuary estate under the terms of the will, were directed to be held by the trustees therein named in trust until the plaintiff became 25 years of age, subject, however, to a power of sale by the executors and trustees and, in their discretion, to pay him a portion of the proceeds before that time; that provision was made for the payment of certain income to the plaintiff before his mother's death and to the payment to him of the principal, including his portion of the residuum, when he reached 25 years of age if his mother was then dead; that his mother, one William H. Childs, and the defendant, Eversley Childs, who was a brother of the plaintiff, were appointed executors and trustees, and the defendant was also appointed testamentary guardian of the plaintiff; that the will was admitted to probate in May, 1908, and letters testamentary were issued to the plaintiff's mother and the defendant, both of whom qualified; that they acted as such until March 24, 1904, when the mother died; that the third executor and trustee named in the will was thereupon substituted in her place, and he served with the defendant as executor until July 15, 1907, when an accounting was had and a decree entered directing the executors to turn over the assets of the estate to themselves as trustees; that William H. Childs served as such trustee until August 8, 1908, when he, upon his own application, accounted and was discharged; and that thereafter the defendant continued to act as sole trustee until July 13, 1911, when, as appears by the answer and admitted by the reply, he accounted and was discharged.

The complaint further alleges that in December, 1908, the executors unlawfully sold all of the testator's interest in the Mica Roofing Company in violation of an express provision contained in the will, which directed that the plaintiff's interest therein should be held and managed by the executors and trustees until the plaintiff arrived at the age of 25 years, when the same was to be turned over to him. There is no allegation in the complaint that the price at which this interest was sold, $157,764.26 in cash, and $311,000 par value of the capital stock of a corporation which purchased it, was inadequate, or that the sale was fraudulent. It is, however, alleged that the power of sale contained in the will did not authorize the sale, and that the purchaser took title to the property with notice of that fact, and for that reason the sale should be set aside, and, if necessary for that purpose, that the party who made the purchase be made a party defendant. It is further alleged that a part of the residuary estate of the testator consisted of 475 shares of the capital stock of the Bon Ami Company, of

which the directors sold 50 shares in 1899 and the balance at some time prior to 1903; that the price at which this stock was sold was grossly inadequate; that the purchase money was furnished by the defendant, he being the real purchaser; that he still owns such stock, though the same was transferred to and stands in the name of another representing him; and, for that reason, that the sale should be set aside and defendant be compelled to account therefor and for the dividends received thereon. It is further alleged that in April, 1907, the executors held, as part of the residuary estate, 2,770 shares of the capital stock of the American Coal Products Company, which then or at some time thereafter they sold for $208,365, notwithstanding the fact that it was worth $277,000, and, by such sale through their fraud or negligence, a loss of $61,365 was sustained by the estate, and for which the defendant should account.

After certain denials, the answer sets up certain affirmative defenses, from which it appears that the plaintiff was a party to various proceedings in the Surrogates' Court in which the accounts of the executors and trustees were judicially settled, and it is alleged that the decrees entered in those proceedings are binding and conclusive upon the plaintiff in this action, and that therefore he cannot litigate the questions here sought to be raised. It is specifically alleged that on February 21, 1900, a decree was entered in the Surrogates' Court settling the accounts of the executors up to that time, and in that proceeding there was set forth at length all of the facts connected with the sale of the Mica Roofing Company and of the 50 shares of the Bon Ami Company; that on February 25, 1904, a similar decree for the intervening period was entered in a proceeding in which appeared all of the facts connected with the sale of the balance of shares of the Bon Ami Company; that on July 15, 1907, a decree entered finally settling the executors' accounts and directing them to turn over to themselves as trustees all of the assets of the trust estate, and in that proceeding all of the facts in regard to the sale of the stock of the American Coal Products Company were set forth; that on August 6, 1908, when defendant's cotrustee, William H. Childs, was discharged, a decree was entered settling his accounts and overruling the plaintiff's objections, which objections included the very issues here sought to be raised; that on June 13, 1911, which was subsequent to the commencement of this action, there was entered a final decree settling the accounts of the defendant and overruling the plaintiff's objections thereto, which objections some, if not all, of the issues sought to be raised by the complaint, directing distribution of the trust estate and, upon such distribution, discharging him; that the plaintiff was a party to all of those proceedings; and that the decrees entered therein have never been reversed, modified, or set aside, but that the same still remain in full force and effect.

The answer further alleges that the defendant has paid out and distributed the trust estate, as he was directed to do by the decree of the Surrogates' Court of June 13, 1911; that prior to the entry of that decree the plaintiff had assigned to a trust company his interest in the trust estate in excess of $300,000; and that the defendant, pur-

suant to that assignment and with the acquiescence and ratification of the plaintiff, paid to such trust company the plaintiff's interest in the trust estate less $300,000, which latter amount was also paid to the trust company pursuant to orders of the Supreme Court.

[1] The reply admits the entry of the decrees in the Surrogates' Court; that they have not been reversed, modified, or set aside; but denies on information and belief certain allegations of the answer as to what the accounts which were settled by the decrees contained. These denials are clearly frivolous and raise no issue. A denial "upon information and belief" is not expressly authorized by the Code of Civil Procedure (section 500); but, treating the same as a denial of knowledge or information thereof sufficient to form a belief," it is insufficient, because what the accounts contained and the facts therein set forth are all matters of public record, and they were all judicially considered in a proceeding in which the plaintiff was a party and of which he necessarily must have knowledge. These denials are manifestly a mere evasion and should be disregarded. Kirschbaum v. Eschman, 205 N. Y. 127, 98 N. E. 328; Dahlstrom v. Gemunder, 198 N. Y. 449, 92 N. E. 106, 19 Ann. Cas. 771; City of New York v. Matthews, 180 N. Y. 41, 72 N. E. 629.

[2] But, even if it be assumed that such denials were made in good faith and are true, this does not raise an issue inasmuch as the plaintiff admits that the surrogates' decrees referred to were duly entered and the same still remain in force. Those decrees, and especially the final one entered on June 13, 1911, under which the trust estate was distributed, are an absolute bar to the maintenance of this action. There is not a single allegation in the complaint, or a fact stated from which an allegation fairly can be inferred, that any of the decrees were obtained through fraud or misrepresentation, or that the plaintiff did not have knowledge of all the transactions complained of prior certainly to the entry of the last decree. All that is claimed is that the Surrogates' Court did not have jurisdiction to decide the questions sought to be litigated.

[3] This claim has no foundation for its basis, because a Surrogates' Court has power to construe a will in so far as it may be necessary to determine to whom and in what manner an estate shall be distributed, and also power to determine what property an executor or trustee holds, and for what he is liable to account. It is true, as suggested by the plaintiff's counsel, that a Surrogates' Court is one of limited jurisdiction, and for that reason an independent proceeding could not have been maintained for the sole purpose of construing the will of the testator or to have the sale of the business of the Mica Roofing Company or the shares of the Bon Ami Company set aside. Matter of Schnabel, 136 App. Div. 522, 121 N. Y. Supp. 54, affirmed 202 N. Y. 134, 95 N. E. 698; Matter of Randall, 152 N. Y. 508, 46 N. E. 945; Matter of Wagner, 119 N. Y. 28, 23 N. E. 200. But a Surrogates' Court has power expressly given to it by statute to settle the accounts of executors and trustees (sections 2742, 2807, 2810, Code of Civil Procedure), and in settling such accounts it necessarily had the power in the present case to determine whether the executors or trustees should be charged with property which be-

longed to the trust estate or with the proceeds derived from the sale of the same. The transactions complained of were included in the accounts which have been judicially settled, and the Surrogates' Court necessarily determined that the sales were properly made, and that the proceeds thereof were to be accounted for by the executors and trustees.

[4] It is settled by a long line of decisions that a surrogate's decree is binding as to all matters considered, so long as it remains in force, upon all of the parties who were properly before the court at the time the decree was entered. Objections to an account of an executor or trustee must be presented and passed upon prior to the entry of a decree settling them, or else a party is thereafter precluded from raising any question with reference thereto. So long as the decree remains in force, it is final and conclusive, with reference to all matters, embraced within the accounting. Burkard v. Crouch, 169 N. Y. 399, 62 N. E. 431; Weintraub v. Siegel, 133 App. Div. 677, 118 N. Y. Supp. 261; Rhodes v. Caswell, 41 App. Div. 229, 58 N. Y. Supp. 470; Mutual Life Insurance Company v. Schwamer, 36 Hun, 373, affirmed 101 N. Y. 681. The decrees here under consideration cannot be attacked collaterally, and, until they are set aside in a direct proceeding for that purpose, they are conclusive upon the plaintiff not only as to what the defendant was chargeable with, but also as to the legality of sales made by him. Joseph v. Herzig, 198 N. Y. 456, 92 N. E. 103; Jordan v. Van Epps, 85 N. Y. 427; Matter of Douglass, 60 App. Div. 64, 69 N. Y. Supp. 687. Nor does the case of Fulton v. Whitney, 66 N. Y. 548, upon which the appellant mainly relies, hold anything to the contrary. There, as pointed out in Mutual Life Insurance Company v. Schwamer, supra, the transaction sought to be set aside was not involved in, but was extraneous to, the accounting.

[5] But, aside from the conclusiveness of the various decrees of the Surrogates' Court, I am of the opinion that the acceptance by the plaintiff, or his assignee, of his share of the proceeds of the transactions now complained of, constituted a ratification of such transactions and estops him from now maintaining this action. At the time when the defendant, pursuant to the final decree, paid to the plaintiff or his representative the amount directed to be paid to him, the plaintiff had full knowledge of all the facts of which he now complains. With such knowledge he did not appeal from the decree or ask that it be modified or set aside; on the contrary, he acquiesced in it and accepted the payments directed to be made. He is not now in a position to question the validity of the decree. He certainly cannot take and retain the proceeds of the sales and at the same time regain his interest in the property. In any view, before he could question the validity of the sales, he would have to return what he had received from the proceeds of the sales.

My conclusion therefore is that the defendant's motion for judgment on the pleadings should have been granted.

The order appealed from therefore is reversed, with $10 costs and disbursements, and defendant's motion for judgment granted, with $10 costs. All concur.