In the Matter of the Accounting of DAVID BANDLER, as Administrator C. T. A. of the Estate of J. WHITWORTH BUCK, Deceased.

Surrogate's Court, Westchester County, December 20, 1944.

*Chester A. Slocum* and *James D. Hopkins* for administrator *c. t. a.* and another.

*Ralph A. McClelland for* Maree W. Shaffer and another, objectants and legatees.

GRIFFITHS, S.   The account of the administrator *c. t. a.* was settled by a decree of this court dated December 31, 1937.   The account covered a period commencing April 15, 1936, and ending December 31, 1937.   An order vacating said decree as to the objectants herein who were not made parties to the aforesaid proceeding was affirmed in 267 Appellate Division 328.   Thereafter objections were filed by certain of the residuary legatees entitled to a two-ninths interest under the will of decedent's widow.

The objections filed relate principally: (a) to the retention by the administrator *c. t. a.* for an unreasonable length of time

of stocks purchased by the decedent or by the executrix under his will; and (b) to the investment in, and retention of, securities by said administrator *c. t. a.*, only some of which are claimed to have been nonlegal securities.

The testator died on December 16, 1934. On January 21, 1935, his will was admitted to probate and letters testamentary were issued to his widow, Eugenie A. Buck, who was the sole beneficiary thereunder. On October 17, 1935, the widow of testator was adjudged an incompetent person and a committee of her property was appointed. On November 6, 1935, letters of administration with the will annexed issued to the accountant herein, who had theretofore been appointed such committee. The account of said executrix as rendered by her said committee was filed in this court on August 7, 1936. On March 26, 1937, a decree was made settling such account for the period ending November 6, 1935. An intermediate account of the administrator *c. t. a.* covering the period from the date of his appointment to April 15, 1936, also filed on August 7, 1936, was settled by a decree of this court dated March 26, 1937. The final account of the administrator *c. t. a.* for the period ending June 17, 1937, was filed herein on July 9, 1937, and proceedings were simultaneously instituted for the judicial settlement thereof. A supplemental account was thereafter filed for the period ending December 31, 1937, and as above indicated, was settled by a decree bearing said date.

The widow of decedent died on April 8, 1939. Her will was admitted to probate by a decree of this court dated May 10, 1939, and letters testamentary thereunder were issued to the same person who had theretofore been appointed as committee of her property and as administrator *c. t. a.* herein. An order was made by the Supreme Court of Westchester County on October 10, 1939, settling the final account of her said committee, in a proceeding to which objectants herein were parties. The rendering of a decree settling the accounts of the executor under the will of decedent's widow is awaiting the determination to be made herein.

By the provisions of the will of J. Whitworth Buck no express authority was given to the executor to retain any securities or to make any investments. There was no direction contained therein relating to the liquidation of estate assets. By the will his entire estate after the payment of debts and funeral expenses, was given to his wife if she survived him. The stocks in question were admittedly retained by such administrator *c. t. a.* from November 6, 1935, the date of his appointment, until

December 31, 1937, and thereafter were delivered to him in his capacity as committee.

Considering, first, the objections relating to the retention of the stocks in which the decedent or his executrix had invested, it appears that on November 6, 1935, the date of the appointment of the administrator *c. t. a.*, the assets of the estate aggregated $114,842.67. The assets were comprised of common stocks, the values of which as set forth in such account, totaled approximately $46,600 and of preferred stocks valued at approximately $47,500. Exclusive of cash of $1,325.02 and jewelry of a value of less than $500, the remaining assets consisted of bonds, the valuation of which, as set forth therein, totaled about $19,000. By February 4, 1936, the administrator *c. t. a.* had liquidated $60,100 worth of such stocks at a slight gain of $350. By October 20, 1936, the further sale or liquidation of stocks valued at $7,700 resulted in a gain of more than $3,500. The bulk of the proceeds of sale were invested in railroad bonds. The remaining stocks were retained throughout the accounting period.

At the time of his appointment the administrator *c. t. a.* was and still is a practising attorney. It was established that during the period of his administration he sought and considered the advice of investment counsel, followed market quotations, business conditions, and other data usually regarded as a barometer of financial conditions. It was shown that there was a rising market generally from January, 1936, until the spring of 1937, when a slight recession occurred. This was followed by a resumption of the upward trend, which continued until about August of 1937, when a downward trend preceded a sharp decline which occurred during the fall of 1937.

The administrator *c. t. a.* departed on a vacation during the late summer of 1937, but was obliged to return to his home because of illness. This illness was followed by a serious heart ailment which commenced during the early part of October, 1937. The nature of the latter ailment was such that the administrator *c. t. a.* was advised against any physical or mental exertion for more than a month. By reason of such illnesses the accountant was unable to return to his office from the late summer of 1937 until spring of 1938. Such indispositions contributed to the delay in the completion of the accounting proceeding instituted in July, 1937, until December 31st of that year.

Although it is the duty of an executor to liquidate estate assets (*Matter of Andrews,* 239 App. Div. 32), he may not safely

permit any substantial portion of estate funds to remain unproductive during the period of administration. (*Matter of Philp,* 29 Misc. 263; *Matter of Kruger,* 139 Misc. 907.) Notwithstanding that in the absence of bad faith an executor is entitled to a reasonable time within which to convert estate assets (*Matter of Varet,* 181 App. Div. 446, affd. 224 N. Y. 573), he should not hurriedly sacrifice securities at a loss. (*Matter of Andrews, supra.*) It has been held that a period of eighteen months from the issuance of letters is a reasonable time within which to liquidate estate assets. (*In the Matter, etc., of Estate of Weston,* 91 N. Y. 502.) Since *Matter of Weston* (*supra*) was decided, however, the period of time within which a legatee must wait before his legacy may be enforced, has been considerably decreased. (*Matter of Andrews, supra.*) However, the test of what is a reasonable time, under all the circumstances, in the last analysis is whether the fiduciary has exercised the diligence and prudence employed by prudent and intelligent men in the management of their own affairs. (*Matter of Varet, supra.*) Such illness of the estate representative, of course, would not justify a failure to liquidate securities prior thereto. Did the administrator *c. t. a.* fail to sell such securities within a reasonable time after his appointment? The court must " look at the facts as they exist at the time of their occurrence, not aided or enlightened by those which subsequently took place " (*Purdy* v. *Lynch,* 145 N. Y. 462, 475–476).

It appears that on the death of deceased on December 16, 1934, the value of the common stocks to the retention of which objections have been filed, aggregated $20,830.90. By November 6, 1935, the date of the appointment of the administrator *c. t. a.,* the value of such securities had increased to $25,192.15. On April 15, 1936, the date of his intermediate account, the valuation thereof had increased to $31,635.75, and by June 17, 1937, to $33,067.62. Between June 17, 1937, and the date of the decree settling such account there was a decrease in the aggregate market value of these securities to the sum of $21,858.50. At the termination of the accounting period, therefore, on December 31, 1937, the value of such stocks was greater than at the death of decedent but less than the value at the date of the appointment of the administrator *c. t. a.* It is apparent, therefore, that the loss occurred between the verification of the final account and the date of the decree settling said account. The objections are directed against the failure of the fiduciary to sell such stocks between November, 1935, and April, 1937, a period of seventeen months after the appointment of the administrator *c. t. a.*

All of the stocks in question were listed, and all were securities for which there was a ready market. The aggregate market value thereof had increased from the date of death of decedent to the date of the appointment of the administrator *c. t. a.* The market trend continued upward after such appointment and the quotations on the securities in question were reflected in the general upward trend.

What is a reasonable time to convert estate assets depends upon the facts of each particular case. (*Matter of Parsons,* 143 Misc. 368, mod. 238 App. Div. 883.) In some instances, retention of speculative securities by executors for more than two years has been held not to be unreasonable. (*Matter of Beadleston,* 146 Misc. 548.) In others, the executor's failure to convert stocks within less than six months has been held unreasonable. (*Matter of Stumpp,* 153 Misc. 92.) The provisions of the will, the nature of the securities retained, and whether the securities are held in a rising or falling market may be included among the factors to be considered in determining whether the securities were held for an unreasonable time. It is of some significance that the accountant is a successor fiduciary appointed almost ten months after the issuance of letters testamentary. Since the statutory period after which an accounting might be rendered had already expired at the time of his appointment, the administrator *c. t. a.* might therefore have rendered an account immediately following his appointment. (Surrogate's Ct. Act, §§ 225, 261.) As these stocks were readily salable, the court is of the opinion that the administrator *c. t. a.* should have converted them within a shorter period of time than ordinarily would be afforded to the original representative. Clearly the retention thereof until December 31, 1937, was unreasonable. The objectants, however, claim that the stocks should have been sold in the spring of 1937, at which time the market values thereof were at or near their peak. The acceptance of valuations at such time would not only be arbitrary, but would erroneously presume the propriety of the retention of readily salable stocks for more than a year after the appointment of the administrator *c. t. a.* and more than two years after the issuance of letters testamentary. Under all the circumstances, a period of three months is found to have been a reasonable time within which to convert such stocks and the retention thereafter was accordingly improper. The court having concluded that the stocks in question were retained for an unreasonable time and that such retention was negligent, objections designated " 2 ", " 3 ", " 4 ", " 5 ", " 7 " and " 8 "

must be sustained, unless the order settling the account of the committee is a bar to such objections.

As to the objection relating to reinvestments made by the administrator *c. t. a.*, the distinction made in *Matter of Clark* (257 N. Y. 132) is noted, between the acts of a fiduciary in making or failing to make investments of trust funds, and his acts in making or failing to make a prompt disposition of securities in which the decedent had invested. As the court therein states, at pages 136 and 137: '' Self-evidently the purchase of a speculative stock by a trustee is one thing; the retention of such a stock awaiting the arrival of a favorable opportunity to sell, is quite another; the former would constitute negligence; the latter, regarded prospectively, might be prudent, although in retrospect it might seem to have been a grievous error.''

A distinction must also be made between the duties of an executor or administrator and those of a trustee. An executor or administrator is under a duty to distribute the assets of the estate or their proceeds after the payment of debts, taxes and funeral and administration expenses. However, it is not entirely correct to say that during the period reasonably required for administration an executor, as such, has no authority to make investments. (Decedent Estate Law, § 111; *Villard v. Villard,* 219 N. Y. 482; *Stark* v. *National City Bank,* 278 N. Y. 388.) However, in any case where estate assets may be invested a fiduciary is bound to employ that degree of care which prudent men of discretion employ in like matters of their own. (*King v. Talbot,* 40 N. Y. 76; *Matter of Clark, supra.*) So long as this standard of care is observed, a fiduciary who may invest estate funds will not be held liable for any resulting loss, provided the investments be made in the authorized classes of securities. (*Matter of Clark, supra.*)

An examination of the lists of legal securities prepared by the State Banking Department discloses that from the date of purchase until the termination of the accounting period, all of the bonds to the purchase and retention of which objections have also been filed, were legal investments. The aforesaid lists include the Michigan Central Railroad Grand River Valley 4% bonds due in 1959 therein referred to as Grand River Valley bonds for the years 1936 and 1937. The proof has therefore failed to establish that any of the bonds in question were non-legals when purchased or at any time since, during the period covered by the account. It affirmatively appears that all of the bonds to the purchase and retention of which objections have been filed, were legal securities when purchased and throughout the period covered by the account.

There remains to be considered, however, the question as to whether the purchase or retention of any legal securities was permissible. Even though under some circumstances it may be the duty of an executor or administrator to deposit the proceeds of converted assets in a bank at interest rather than invest them in securities (*Matter of Kruger,* 139 Misc. 907, *supra; Matter of Philp,* 29 Misc. 263, *supra*), the duties imposed upon such fiduciaries depend in part upon the object to be accomplished. In discussing the duties of an executor with respect to the retention and investment of estate assets, in *Villard* v. *Villard* (219 N. Y. 482, 498, *supra*) the court, in an opinion by Chase, J., stated as follows: " While the primary duty of an executor is to convert the assets of an estate into cash and pay the debts * * * and bequests provided by the will, it may be necessary, or at least prudent in many cases, to hold all of the assets of the estate until a distribution thereof pursuant to a decree upon a judicial accounting, and it may also be desirable or even the duty of an executor to invest uninvested funds in his possession as executor during such time, and in any case circumstances may arise which may make it desirable or the duty of an executor to change the investments of the testator as in case of palpably unsafe investments, or those reasonably certain to depreciate in case they are held [Citing authorities.] It is not, therefore, entirely correct to say that an executor as such has no authority to make investments."

Here, the administrator *c. t. a.* was also the committee of the property of an incompetent who was the sole legatee under the will. He might have anticipated the delivery in kind to himself as committee of the legal securities comprising the net estate pursuant to judicial authority. By paragraph " Second " of his will testator gave, devised and bequeathed " all the rest, residue and remainder of my estate, real, personal and mixed and wheresoever situated to my beloved wife, Eugenie A. Buck, if she survives me." And even though there were a direction for payment, which presumes payment in cash, this would not have prevented payment in any other form acceptable to the payee. (*Camp* v. *Smith,* 49 Hun 100, affd. 117 N. Y. 354; *Villard* v. *Villard, supra.*)

Under these circumstances, the purchase of legal securities was not necessarily improper, nor was the retention thereof for a time longer than the usual period required for administration, unreasonable. Upon the facts herein, no rule of prudence would render the accountant negligent for having per-

formed or omitted to perform in his capacity as administrator *c. t. a.* those acts which he might properly have performed or omitted to perform in his capacity as committee with respect to these securities.

By an order of the Supreme Court dated December 20, 1937, the committee was authorized to receive the share of his incompetent ward in the within estate upon the filing of a duly approved bond in an amount therein fixed. The affidavit upon which the order was granted clearly discloses that delivery in kind was contemplated. Moreover, the power of the accountant to receive as committee legal securities held by him as administrator *c. t. a.* has not been questioned. The objectants would be estopped from so doing by reason of the order settling the account of the committee. The objectants having been made parties to said proceeding, the order settling the accounts of the committee was a conclusive adjudication as to the matters embraced in the account. (*Matter of Cowen,* 130 App. Div. 365.) The bar of a former judgment or decree extends, however, only to those matters which have been or might have been litigated therein. (*Hull* v. *Hull,* 225 N. Y. 342.) Such decree was conclusive so long as it remained in force as to all persons who were properly before the court. (*Childs* v. *Childs,* 150 App. Div. 656.) The order settling the account of the committee, however, did not and might not properly adjudicate the propriety of the retention of such securities by the administrator *c. t. a.* during the executorial period. The doctrine of estoppel may not be invoked against objectants by reason of their implied acquiescence to the settlement of the accounts of the committee. The court need not determine whether such order may be deemed to have approved the failure of the accountant to sooner reduce to his possession as committee the assets held by him as administrator *c. t. a.*

The court has concluded that the order settling the accounts of the committee did not bar the assertion of any of the objections interposed herein. This determination applies as well to the objections relating to the purchase and retention of the bonds as to those with respect to the retention of the stocks. Accountant's motion to dismiss said objections by reason of the entry of the order settling the account of the committee is accordingly denied.

It has not been established that the administrator *c. t. a.* was negligent in selecting the securities purchased or in retaining them during the period covered by his account. Such railroad bonds were legal securities when purchased and were selected

only after consideration. To hold that there was negligence in the purchase or retention because some or all of the securities were removed from the legal list after December 31, 1937, would be to judge the conduct of the estate representative by a wisdom acquired after the event.

Accordingly, the court holds that objectants have not established that accountant failed to exercise due care or prudence in the investment in, or in the disposition or retention of, such securities.

Objections numbered " 6 ", " 9 ", " 10 " and " 11 " are accordingly overruled and dismissed, as is also objection numbered " 13 ".

In ascertaining the amount of the loss occasioned by the retention of such stocks, the slight decrease in the market prices of such securities after November 6, 1935, followed by an advance after December, 1935, renders it practically impossible to fix the exact date upon which each of such stocks should have been sold. Since it cannot be determined that the exercise of reasonable care required a sale on any specified day within the period fixed as a reasonable time for the sale thereof, the accountant would not be chargeable with any increase in market prices during such period. (*Matter of Frame,* 245 App. Div. 675.) The accountant will therefore be charged with the values thereof as of November 6, 1935, the date when such stocks were receivable by him. (*Matter of Yung,* 103 Misc. 358; *In Re Hamersley's Estate,* 180 N. Y. S. 887, not otherwise reported.) To afford a basis for computing such loss, there shall be deducted from the value of such stocks on November 6, 1935, the aggregate market values thereof on December 31, 1937. The amount of the surcharge shall be limited to the interests of the objectants (*Matter of Dempsy,* 259 App. Div. 1083), and will be fixed in the decree settling the account of the executor under the will of Eugenie A. Buck, deceased. Interest to December 31, 1937, at rate to be fixed in said decree shall also be included in arriving at the amount of the surcharge against which there shall be credited all dividends received on such stocks, during the same period. Objections designated " 2 ", " 3 ", " 4 ", " 5 ", " 7 " and " 8 " relating to the retention of such stocks are accordingly sustained to the extent hereinabove indicated.

Objections numbered " 12 " and " 14 ", also covered by paragraph " 1 " of respondents answer, are likewise overruled and dismissed. The attorney's fees to which objection is made were allowed or approved by prior decrees settling the account of the executor and the intermediate account of the adminis-

trator *c. t. a.* The amount of attorney's fees so allowed does not appear to be excessive.

A fiduciary should not be denied commissions because of an honest mistake of law. (*Matter of Baker*, 249 App. Div. 265.) Commissions will therefore be awarded, the amount of which will be fixed in the decree to be made hereon. The commissions allowed by the decree dated December 31, 1937, should be recomputed upon the basis of the value of the securities as established in this proceeding and allowed as so computed.

Proceed accordingly and settle decree.