George Frankenthaler, S.
In 1938 Leopold Spingarn, a member of the New York Stock Exchange, formed a partnership with his nephew to engage in a general stockbrokerage business under the firm name of Leopold Spingarn & Co. The nephew invested no capital in the firm but was to receive a 15% interest in the profits. Subsequent modifications of the partnership agreement increased the nephew’s participation in the profits to 50%. Leopold Spingarn died on July 1, 1951 and *38 the partnership then terminated under the terms of the partnership agreement and by operation of law. Thereafter the nephew in association with two other persons continued to do business under the same firm name from the offices previously maintained by the partnership.
The nephew and the decedent’s brother as executors under the will have filed a final account of their proceedings and the nephew also has filed an account as surviving partner of Leopold Spingarn & Co. Objections to the executors’ account charge that it omits the value of the good will of the partnership as an estate asset. The executors’ response to these objections is that the partnership did not have good will.
Good will does exist in a stockbrokerage business although in a particular case the value of such good will may be nominal (Matter of Brown, 242 N. Y. 1). The cited decision stated the two primary elements that measure the value of good will to be continuity of place and continuity of name. The court added that there also may be other elements such as continuity of organization. Considering such elements in conjunction with the facts herein it is found that the nephew appropriated all of the elements mentioned. Following decedent’s death the nephew continued the brokerage business from the same offices from which decedent’s firm had conducted its business. The new partnership formed by the nephew adopted the name of the terminated partnership despite the fact that no member of the new firm was named Leopold Spingarn. The organization of the prior firm was kept intact. The original partnership agreement between decedent and his nephew explicitly recognized the existence of good will and provided that upon the dissolution of the partnership the good will of the business and the exclusive right to the firm name would be the property of decedent. After testator’s death the new partnership formed by the nephew recognized the existence of good will by his representation to customers that the new firm was the successor to the former firm.
It has been agreed by the parties, without conceding that good will existed, that the period January 1, 1947 to June 30, 1951, the four and a half years immediately preceding testator’s death, constituted a representative period for the computation of any good will of the business. It also is not in dispute that any good will existed as to the part of the business concerned with customers’ brokerage accounts only and not as to the business conducted by decedent as a specialist. The average net income earned during this period from customers’ commission business was $63,957.77. The total average annual capital employed in the partnership was $761,214.64. After deduction *39 of $51,551.64 as the average value of the partners’ equities in their personal trading accounts and $18,589.20 as 35% of the average value of the exchange membership chargeable to the specialist branch of the business, there remains an average annual capital employed in the commissions branch of the business of $691,073.80. Deducting interest at 5% on the latter figure and a sum of $19,500, which the court regards as a reasonable deduction for salaries of the partners, results in an annual net income of $9,904.08. Computed on a purchase period of three years the good will is valued at $29,712.24. The executors are surcharged in that amount and are to include that sum in their account.
It is held that the so-called employees’ bonus account was an asset of the partnership for which the surviving partner was accountable. The creation of this account by a mere bookkeeping notation did not create any contractual liability of the firm to its employees. Its purpose was to foster harmonious employer-employee relations but this purpose ceased to exist when testator’s death terminated the partnership. No justification exists for payment of the terminated partnership’s assets to employees of the new firm.
It is found that the estate has no interest in the moneys and securities reported as belonging to customers of the old firm and now held by the surviving partner. The latter has recognized his legal obligation under the Abandoned Property Law in respect of such money and property.
The surviving partner accepted the legacy of the stock exchange membership under the conditions attached thereto. The legacy became his as of the date of testator’s death and he is liable for the dues and gratuities chargeable to such membership after testator’s death. The widow’s exercise of her right of election pursuant to section 18 of the Decedent Estate Law did not affect the validity of this legacy or the legatee’s privilege to accept or reject it.
The objection to the fact that the executors distributed securities to the testamentary trusts with the result that the trusts were not set up initially in cash amounts is without merit. The asset reported in Schedule B-l of the account as uncollected has since been collected and no ruling upon the objection pertaining to that asset is required.
The codicil to testator’s will bequeathed $20,000 to his widow. She has elected to take her share of the estate as in intestacy pursuant to section 18 of the Decedent Estate Law. Inasmuch as the testamentary provision for her is less than her intestate share, she has the limited right to elect to take the difference *40 between the amount of her legacy and the amount of her intestate share. Question arises as to the computation of this share because the will contains a direction as to the apportionment of estate taxes. This direction is that “ any and all inheritance, succession, transfer and estate taxes that may be imposed upon or become due, with respect to any property or any interest passing under this Will or any Codicil thereto, or any interest passing pursuant to any policies of insurance, or any other taxable transfer, or heretofore or hereafter made by me, shall be paid out of my estate and the same shall not be chargeable to or paid by any beneficiary or legatee herein or therein named ”. It was said in Matter of Wolf (307 N. Y. 280) that in an estate where taxes were not to be apportioned among all testamentary beneficiaries, section 18 of the Decedent Estate Law, read in conjunction with section 124 of the Decedent Estate Law, fixed the elective share of a surviving spouse as not more than one half of the net estate remaining after deduction of debts, funeral expenses, administration expenses and all estate taxes. The distinction made in that decision between a will containing a stipulation against apportionment of taxes and a will omitting reference to tax apportionment was abolished by chapter 487 of the Laws of 1955 which amended section 18 of the Decedent Estate Law. Paragraph (a) of subdivision 1 of the latter statute, prescribing the maximum elective share of a surviving spouse, now explicitly provides that all estate taxes shall be disregarded in the computation of the net estate of which the surviving spouse’s maximum elective share shall be one half. However, the 1955 amendment to section 18 of the Decedent Estate Law is not applicable to the estate of this decedent who died prior to the enactment of the amendment (Matter of Spencer, 145 N. Y. S. 2d 397, 400) and the rule stated in the Wolf decision is controlling.
The amount of the estate to which the widow shall be entitled as her elective share is to be charged pro rata against all the legatees and the gifts in trust (Matter of Wittner, 200 Misc. 957). For this purpose the bequest under the eleventh paragraph of the will is to be valued at $20,000. The trust under the second paragraph of the codicil is to bear its proportion of the elective share inasmuch as an intention to exempt that trust from contribution is not contained in the will (cf. Matter of Ittleson, 197 Misc. 786, 788). Such contribution will not affect the direction for annual payments to the beneficiary except for the fact that the principal of the fund from which .such payments may be made will be diminished.
*41 The foregoing rulings dispose of the widow’s objections numbered respectively first, third, fourth, eighth as amended, tenth (a) and (c), eleventh and thirteenth. Her objections second, fifth, seventh, ninth, tenth (b) and twelfth have been disposed of by stipulation. It appears from the memorandum of the executors that their account will be adjusted to meet the widow’s objection sixth. Her objection fourteenth is dismissed. These dispositions also constitute rulings upon the objections of other parties.
Schedule 0-1 of the account recites that one of the attorneys for the executors has a claim for legal services rendered to the estate. The amount of such claim is not stated in the account. The citation does not request that the fee of this attorney be fixed by the court and, as a consequence, the parties to this proceeding did not receive notice that such relief would be asked. The affidavits subsequently submitted by the attorney referred to in the account and another attorney requesting fees totaling $39,000 will not be acted upon at this time.
Submit decree on notice.
(Supplemental decision.)
. Supplementing the prior decision herein it is held that interest is to be computed at the legal rate upon the surcharges imposed upon the executors by reason of issues raised in the widow’s objections first, second, third and eighth (c). The executors are surcharged with interest upon the sum of $35,500, the amount receivable by the estate for the stock exchange membership, at the rate of 4% from the date of testator’s death to March 21, 1952 and from the latter date at the legal rate upon the sum of $500, the unpaid balance of the purchase price of the exchange membership. The widow has requested interest at the average rate earned by the estate upon the surcharge imposed by reason of her objection fifth and such interest charge will be made.
The prior decision held that the good will of the partnership was an estate asset in which the surviving partner, as such, did not have an interest. The surcharge in the amount of the good will was imposed upon the executors by reason of their failure to include that amount as an estate asset in their account.
The foregoing clarification of the prior decision has been made at the request of the attorney for the widow but his informal application that the court reconsider and modify the decision is not entertained.
Submit decree on notice in accordance with this and the prior decision herein.