James S. Brown, J.
This partition action was commenced in 1953. The real property involved consisting of seven or eight adjoining buildings is taxed under one tax lot with a current assessed valuation of $250,000. Plaintiffs own interests totaling 75% and the Niper defendants own 25%.
By reason of various deaths and births it became necessary to file and serve, pursuant to orders and without prejudice to proceedings already had, three supplemental summonses and three amended complaints. In January, 1959, by stipulation and order, the third supplemental summons and third amended complaint were amended without prejudice to the proceedings already had.
On February 27, 1957 an order was entered, appointing a referee to take proof of the facts and circumstances; to ascertain and report the rights, shares and interests of the several parties, etc., and “ to examine into the account of the plaintiffs.”
The account referred to is actually an account of the rents for the years 1954 to 1958 inclusive, made by John L. Spence, Jr., one of the plaintiffs who, with the acquiescence of all the other parties, served as managing agent during that period.
The Referee, after holding hearings at which all parties appeared by attorneys or guardians, filed his report dated May 28,1959. Plaintiffs now move to confirm the report and account and for an interlocutory judgment directing a sale.
*842 On December 17,1954 the then sole defendant, Louis S. Niper, died a resident of Connecticut, survived by a widow and four children. The living issue of the four children consist of seven grandchildren. The said widow, four children and seven grandchildren of Louis S. Niper and the Connecticut administrator of his estate have all been made parties defendant herein in his place. The four children and two of the grandchildren and the administrator oppose the confirmation of the report with respect to its recommendation of a sale of the property in one parcel, and also with respect to the Referee’s refusal to surcharge the managing agent with certain items of disbursement. In addition, the seven grandchildren, all of whom have alleged contingent interests under trusts created by the last three of four wills of said. Louis S. Niper, oppose the confirmation on the ground that the Referee refused to take proof with respect to the validity of those purported wills and found as a fact that the said Louis S. Niper had died intestate.
The objections to the rent account are directed to the deductions credited for alleged management expenses consisting of office salaries, rent, postage and stationery, social security and payroll taxes, telephone, office maintenance, etc. In addition, it is contended that the managing agent did not collect any rent for one of the stores over a period of two and one-half years from the occupant thereof who in his testimony before the Referee indicated a present willingness to pay $100 per month.
The Referee in his report disallowed an item of $285.86, covering postage and stationery, but allowed the other items as reasonable and proper, and disallowed the claim in reference to the uncollected rent.
The testimony established that the agent had rented an office in a nearby building controlled by him and charged the owners of the property herein involved $60 per month for its use, contending that such office space was needed; that he carried on a small insurance and toy engineering business in that same office ; that he hired an employee who managed the property, paying him $40 per week, and that upon that employee’s death he took over the management himself, charging $36 per week. The disputed expenses amounted to some 25% of the rents collected during the five-year period.
The court finds the disputed charge completely disproportionate to the regular and customary fees permitted for the management of real property, and, as is exemplified by the schedules of commissions recommended by the Brooklyn Real Estate Board and other boards in this metropolitan area, the charge for the management of real property should be no more than *843 5% unless otherwise agreed to by the parties. Commissions of receivers, executors, etc., are by law limited to 5% of the gross rents.
Reference was made to an agreement marked plaintiff’s Exhibit 2 for identification. This is a letter dated April 25, 1950 addressed to the agent and signed by all of the then co-owners, including Louis S. Niper. It does not provide for the rate of his compensation, but authorizes him to manage the property until the employment of some real estate firm by the owners. There was some proof that from the time this agreement was made until 1954 said John L. Spence, Jr., managed the property without charge of any kind.
The court fails to find anything in this agreement which would permit this managing agent to receive more than the regular management commissions. Our courts have held that where a fiduciary hires an employee to assist in rent collection the employee’s charges must be paid by the fiduciary out of his commissions (Matter of Knight, 124 Misc. 430; Matter of Althause, 122 Misc. 279) and that any other charges or expenditures should not exceed such commissions (Matter of Schlesinger, 143 Misc. 275).
The said John L. Spence, Jr., is allowed the items making up the expense for janitorial services, but must be surcharged with his other disbursements in excess of 5% of the gross rents.
Such surcharges are limited to the amount of damage sustained only by the Niper distributees, they being the only parties who objected to the account. The other parties, by their actions, acquiesced in such expenditures and agreed thereto. (Matter of Ellensohn, 258 App. Div. 891; Matter of Dempsy, 259 App. Div. 1083; Matter of Mette, 273 App. Div. 740, affd. 298 N. Y. 789.)
With respect to the noncollection of rent item, the testimony reveals that the occupant expended some $6,000 to $7,000 to repair the space he occupied and that presently he keeps such property in repair. His present willingness to pay a rental of $100 per month does not indicate that he would have paid $100 per month or any rental at the time he underwent the large expenditures in altering and repairing the premises. This transaction does not establish any dereliction of duty for which the agent should be surcharged.
The issues relating to the alleged contingent interests of the grandchildren under the wills of Louis S. Niper present an interesting problem. After said Louis S. Niper died, plaintiffs served and filed the second amended complaint which made reference to his four wills and alleged in substance that the earliest one, dated December 17, 1931, had been denied probate *844 in Connecticut and that under it he had given one third of his estate to his widow and the remaining two thirds to his surviving issue; and that he left surviving no posthumous children, but did leave two children born after the will was made. It also made reference to three later wills of October 18, 1951, November 16, 1951 and February 15, 1954, pleading the substance of the trusts provided for therein and alleging that those wills were also denied probate in Connecticut; and that the infant grandchildren of Louis S. Niper “ have an interest in the trusts set forth in the aforesaid wills of said Louis S. Niper, deceased, if same were admitted to probate ’ ’. In paragraph Eleventh it is alleged that Louis 8. Niper died intestate survived by his widow and four children as his only heirs at law and next of kin and that defendant Theodore P. Moser was duly appointed administrator of his estate.
At the hearing it was stipulated by the attorneys and guardians for all the parties that ‘ ‘ in lieu of certified copies of various deeds and wills necessary to be introduced into evidence, the Referee may examine the original Surrogate’s records thereof or may use the abstract and search made by the Home Title Guaranty Company under their number K-98659.” That search was then admitted into evidence as plaintiff’s Exhibit 1.
At pages 46 and 47 of the minutes there is colloquy between one of the guardians and the Referee wherein the guardian observed that the seven grandchildren ‘ ‘ may still have an interest which must be determined by this court at the present time. There would possibly be certain questions as to the competency of the man, Mr. Niper, who made these wills. I might have certain questions on this hearing regarding that if your Honor decided that it was relevant. It is a question of law involving-several points. We have here wills which were offered for probate in Connecticut and denied probate there in Connecticut. We have no way of knowing whether it was on consent or otherwise.” Then there was further discussion as to whether this question could be held in abeyance until the time of the distribution of the proceeds of sale. The Referee asked if there was any evidence to be submitted and said that if no evidence was submitted he would “go along with the complaint”. Copies of three of the four wills were then offered into evidence and objections thereto were sustained. The two guardians of the grandchildren thereupon urged that New York “ does not have to give full faith and credit to these decrees and that this court can go into the question of the validity of these wills and at this time this court can permit me to offer into evidence these wills as affecting the interests of my wards — .” The attorney for the *845 adult defendants explained that he objected to these wills, not because they were only copies, but because “ the Probate Court in Connecticut had jurisdiction of the proceeding and under its decree the afore-mentioned wills were denied probate.” The Referee then repeated, “ I sustain the objection.”
The title company’s search received in evidence contains four papers purporting to be copies thereof, four other papers all dated April 4, 1955 purporting to be petitions for the probate of those wills, and also four other papers each dated April 13, 1955 and titled ‘ ‘ Decree Denying Admission of Will to Probate,” and purporting to be copies of four decrees of the Probate Court of the District of Clinton, State of Connecticut, denying them probate. One decree refers to the earliest will of December 17,1931 and provides in part: ‘ ‘ After due hearing, at which all parties in interest were present and represented by counsel and fully heard, this court finds that subsequent to the execution of said will two children were born to the deceased, namely, Joel Gr. Niper and Louis S. Niper, Jr., and that said will makes no provision for said after-born children. Said instrument is, therefore, denied admission to probate as the last will and testament of said deceased.” It might be observed parenthetically that under New York law (Decedent Estate Law, § 26) the birth of a child after the making of a will does not invalidate the will but merely preserves to that child its intestate share. This 1931 will gave one third of the decedent’s estate to his widow. The remaining two thirds was bequeathed to his surviving issue who proved to be his four children. The general legacy in that will to the decedent’s mother lapsed because she did not survive him. Under the circumstances, probate in New York of that will would produce the same result as an intestacy. This would eliminate the grandchildren as distributees.
The three later wills set up trusts under which the seven Niper grandchildren have contingent interests. Each of the three decrees, which, incidentally, were made nine days after the wills were submitted for probate, denied them probate 1 ‘ because at the time of the execution thereof said deceased lacked testamentary capacity.”
In his afore-mentioned report the Referee found the said Louis S. Niper to have died intestate, and that his seven grandchildren had no interest in the premises, but he also found that said infant defendants “ could possibly have an interest in the estate of Louis S. Niper, if the said wills were admitted to probate in this state ”.
It is the court’s view that the Referee should have taken proof as to the validity of those wills. The right of New York courts, *846 where a will disposed of New York real property, to entertain independent probate proceedings even where the instrument was denied probate in the foreign domiciliary State, has been recognized (Higgins v. Eaton, 202 F. 75, cert. denied 229 U. S. 622; Matter of James, 167 Misc. 142); and it has been held that in a partition action, the court, in determining rights to an interest in the real property, may give effect to a writing purporting to be a will as evidence of title, even though such a paper had not been properly probated; (Bouton v. Fleharty, 215 App. Div. 180, affd. 242 N. Y. 591; St. John v. Putnam, 128 Misc. 714; Bonds v. Smith, 143 F. 2d 369.)
It has also been held that a Surrogate’s decree denying probate to a will upon the ground of invalidity is not res judicata between the parties to a subsequent partition action brought by an heir at law of the testator against a devisee under the will and that the latter is entitled to have the validity of the devise determined (Corley v. McElneel, 149 N. Y. 228). “ It may be observed that the result of a proceeding in the Surrogate’s Court denying probate to a will disposing of real estate, etc., is of importance to the devisee; for whereas, if the will is admitted to probate, the decree is presumptive evidence and he may read in evidence the testimony taken in the proceeding in which it was made, with full force and effect, in a subsequent action; the failure of probate leaves the devisee under the burden of establishing the will, in respect of its execution and of its validity. Notwithstanding the extension of the limits of the surrogate’s jurisdiction, we perceive no sufficient reason for departing from the former rule, which allowed those claiming under a will to set it up and establish their title by common-law evidence, in an action where the title to the real estate devised is involved, notwithstanding a failure to have the will probated.” (See, also, Matter of Goldsticker, 192 N. Y. 35; St. John v. Putnam, supra.)
However, since these wills of Louis S. Niper can only affect the title and ownership of the 25% interest he died seized of and, since there is no dispute concerning the other 75%, the rule laid down in Smith v. Allen (139 App. Div. 657 [1910]) which presented a similar situation applies. The Appellate Division there said (p. 658): “ There is no reason why the plaintiff should have his interest tied up * * *. (See Code Civ. Pro., § 1547) ” and directed that the partition action proceed and that the shares of the proceeds of the parties whose rights and interests were in dispute and undetermined be paid into court and await such determination.
*847 It might he noted here that present section 1025 of the Civil Practice Act is exactly the same as section 1537 of the old Code of Civil Procedure referred to above.
The report of the Referee, except as herein indicated, is in all other respects ratified and confirmed and the court directs entry of interlocutory judgment of partition and sale.
As stated above, the Referee’s report directs the property to be sold in one parcel and some defendants object. While it is true that the question is one usually left to the Referee, such action is subject to the approval of the court. (Underhill v. Underhill, 42 Hun 656, opinion in 4 N. Y. St. Rep. 858, affd. 113 N. Y. 666.) Having viewed the property involved, it is the court’s opinion that the best interests of all the parties concerned will be served by having it auctioned off in one parcel and also in separate parcels and that the highest offer be accepted.
The distribution of the 25% of the proceeds of sale which will belong to the Niper defendants shall be held in abeyance until the validity of the wills of Louis S. Hiper has been determined. Accordingly, this matter is referred back to the Referee only to take proofs on and report as to the validity of said wills, provisions for which procedure may be made in the interlocutory judgment, which shall be settled on notice.