Maximilian Moss, S.
These are four motions addressed to the report of the learned Referee dealing with objections to the executors’ intermediate account as amended. Objections to the widow’s exercise of her right of election pursuant to section 18 of the Decedent Estate Law were dismissed in a separate proceeding (25 Misc 2d 287). The within motions are made respectively by the executors, testator’s widow and by the latter as coexecutrix, and two objectants, testator’s brother and the special guardian who are joined by the third objectant, Bessie Stein, testator’s sister. Each movant seeks in various respects to confirm, disaffirm, or modify the Referee’s report and recommendations, and for other relief.
Testator died on August 13, 1955 survived by his wife, two daughters, a brother and four sisters, for each of whom and in some instances their issue he made certain provisions in his will dated April 1, 1941. Said will was admitted to probate and letters testamentary were issued on October 18, 1955 to the four nominated executors: the widow, testator’s attorney, his accountant now deceased and a banking institution. The latter is also named trustee. The executors were directed by the will ‘ ‘ to liquidate, as soon as may be practicable after my demise, my business now knoAvn as Max Tannenbaum Co. and at present located at 159 Madison Avenue, New York City, or any other business of which I may be the individual owner at the time of my death.” They were to act by majority vote or by delegation to one or more of their number and were given wide discretionary powers including the right to retain, invest and reinvest estate property in nonlegal investments.
The executors’ account shows principal charges of $421,570. Schedule A sets forth assets of $385,457 including $281,505 as the inventory or book value of testator’s interest in the assets of Max Tannenbaum Co., Inc. At the time of his death testator owned 38 shares and his wife 37 shares of the 75 issued and outstanding shares of stock of the corporation. The business was organized by testator in 1938 and incorporated in 1946 to deal in novelties, beads and ladies’ bags. Testator and his wife shared in the conduct of the business, which had moved to another location. Its most valuable asset was the sole agency in this area for the distribution of ladies’ mesh bags and allied products manufactured by Whiting & Davis Company, Inc., a Massachusetts firm with which they had developed a very friendly relationship. The agency was based upon an oral *746 agreement terminable at will. It was interrupted only during the World War and was the source of substantial profits.
It appears that immediately after testator’s death the widow ascertained from Whiting & Davis that they would be willing to continue the sole distributorship with her or with any firm in which she would have an active interest, rather than consider any of the persons who had approached them concerning the agency, or they would market their products directly. She thereupon, with the acquiescence of her coexecutors, decided to liquidate the corporation along with the interest of the estate therein and to continue the business individually. The most serious of the objections to the account stem from this action, particularly the failure of the executors to sell testator’s 38 shares of stock, their failure to make any effort whatsoever to sell the business, and the manner in which the liquidation of the business was carried out. They pursued a plan adopted on October 28,1955 pursuant to a resolution of the stockholders composed of the executors and the widow individually, upon the recommendation of the board of directors in turn composed of the widow and a dummy, and a memorandum of agreement signed by the executors and the widow individually. Under this agreement the corporation was liquidated as of November 1, 1955. The widow immediately (Nov. 1, 1955) began business as S. Tannenbaum Co., and took unto herself individually the entire business, the executors accounting to the estate for 38/75ths of the cash and the value of the inventory and physical assets of the corporation. The widow was delegated to sell the estate’s share of the inventory at regular market prices during the months of November and December, to keep the unsold merchandise at cost and to account for the proceeds excepting obsolete merchandise after deducting her selling and overhead expenses for said period of time.
Disregarding the fact that they were acting in several capacities with conflicting interests, the executors seek to justify their action not only as being in the best interests of the estate but also as being required by the direction in the will ‘1 to liquidate, as soon as may be practicable ’ ’. The will however gave the executors and trustee the power to retain securities and investments as they would be at the time of his-death. No question of construction is now before the court, but it is apparent that there was at least no testamentary compulsion to liquidate the corporation or testator’s stock interest (cf. Matter of Silkman, 121 App. Div. 202, affd. 190 N. Y. 560).
The executors claim that they were obliged to liquidate the corporation in order to enable them to acquire the necessary *747 funds to set up reserves for the various trusts under the will. But they had the power to distribute in kind and they had other wide powers under the will whereby the trusts could be set up pending acquisition of funds if and when necessary for reinvestment. Moreover the cash condition of the corporation which had the sum of $313,303 on deposit indicated no difficulty in that respect, and in fact none arose. Even if speedy liquidation were required under existing special circumstances, the law does not tolerate any exception to the absolute prohibition against self-dealing by a fiduciary with which the executors are charged herein by objectants (Matter of Kilmer, 187 Misc. 121).
There is hardly a better known and more justified interdiction in the law than the one against self-dealing by a fiduciary. When so charged his actions will be scrutinized most carefully. If the charge is established the inquiry ends, and any sale or transfer of assets to him is voidable regardless of the amount of consideration paid or extenuating circumstances, if any. The learned Referee’s finding that objectants have come forward with no evidence that the executors might have struck a better bargain is irrelevant and immaterial. This derives from the over-all duty of the fiduciary to exercise the highest degree of fidelity to his trust. Such exercise is severely prejudiced if not improbable when there is a conflict of interest. A fiduciary must abstain from taking a position where his personal interest might be in conflict with his duty. He may not take advantage of his position or derive any personal benefit from the knowledge acquired in his fiduciary capacity, even if such benefit is not at the expense of his trust estate. When certain actions would be for the best interests of the estate, but possibly involve personal gain or technical conflict of interest, the fiduciary must not proceed without prior authority from the court upon a proper showing. Good faith will not absolve him from the consequences of a violation of his duty, and any doubt will be resolved against him. The consequences are that any resulting loss to the estate must fall upon his shoulders though his motives be innocent, and any profit derived from the action will inure to the benefit of the estate without any compensation for his fruitful efforts, subjecting him to surcharge in either case. These principles require no citation of authority. Their constant application is attested by the still current use of the common-law Latin maxim describing this fiduciary duty— uberrima fides.
The record here discloses that the executors at first indeed considered applying to the Surrogate for approval of the sale to the widow of testator’s 38 shares of stock in Max Tannen *748 baum Co., Inc., at a true valuation. This would have been the proper thing to have done and would have avoided this litigation. Instead, the executors unilaterally determined that the business had no good will and that no one, therefore, would care to buy testator’s stock. They also may have decided that the delay entailed by a proceeding pursuant to section 215 of the Surrogate’s Court Act should be avoided in favor of liquidation during the Christmas season then imminent. The liquidation of the corporation followed and the widow continued the business as her own under the name of S. Tannenbaum Co., for which she filed a certificate of doing business on November 1, 1955 and under the name of S. Tannenbaum Co. Inc., from August 2, 1956 until her voluntary discontinuance of the business in 1958. Throughout this period the business was conducted at the same premises, with the same facilities, the same telephone number and business directory, the same letterheads, advertising, employees and customer lists. Even the former corporate name was kept alive by retaining its metal plaque on the outside wall of the building, although this is ascribed to the landlord of the premises where the company was located. Conceding that the widow could not have been compelled to continue in business, or to continue this business, as she was not a chattel of the corporation — the fact is that she in fact did voluntarily continue the business resulting in substantial profits to herself individually.
“ Good will, when it exists * * * is presumptively an asset to be accounted for like any other by those who liquidate the business ” (Matter of Brown, 242 N. Y. 1, 6). The primary elements that measure the value of good will are here all present — continuity of name (in modified form), of place and of organization along with expectancy of future profits (Matter of Brown, supra; Matter of Spingarn, 5 Misc 2d 36). There was a going, well-established business with all the incidents of its character, including customer lists, a lease running to January 31,1957 and instrumentalities necessary to its operation (Wilson v. Press Pub. Co., 14 Misc. 514; Matter of Dobkin, 145 Misc. 703; cf. Matter of Case, 122 App. Div. 343; Coffey v. Metro Goldwyn-Mayer Corp., 160 Misc. 186). It possessed a valuable agency which, though terminable at will, was in fact continued with profit as long as the widow remained in the business. Under these circumstances it would hardly be deemed ‘ ‘ a wild goose chase ”, as claimed by the executors, to have looked for a purchaser for the controlling stock owned by the estate, a person who for the chance of future profits might be willing to pay *749 something more than merely its share in the net physical worth of the corporation.
The record is barren of any evidence showing any effort whatever of the executors to find a purchaser. The executors contend that the corporation had no good will value and therefore they had none to sell in connection with testator’s 38 shares of stock. The court may appropriately paraphrase the comment in a Nebraska court decision (quoted in Ann. 44 A. L. R. 523). The haste with which the executors settled the affairs of the corporation and allowed the coexecutrix to pursue the same business in the same premises with the same privilege and organization is convincing proof that in their judgment the good will of the business was an asset worth having. Indeed, the executors admit that the agency of Whiting & Davis had good will value, but only to her, and submit that she was within her rights in taking advantage of the situation. The primary reason they give for their opinion as to the absence of salable good will is that the business of the corporation was dependent mainly upon the oral and revocable personal privilege of selling the products of Whiting & Davis and that therefore the sole distributorship was an indefinite privilege that had no value for anyone but the widow if she chose to remain in business as a result of which they decided to liquidate the corporation instead of selling a going business or testator’s interest therein.
As indicated, the situation confronting the executors demanded that an honest effort be made to find a purchaser for testator’s majority interest in the corporation. The executors were in duty bound to exploit all reasonable possibilities in the interests of the estate. No evidence whatsoever was adduced by the executors to show any efforts by them in this direction. Failing to make an attempt to find a purchaser is itself a dereliction of duty. The imagined obstacles in finding an interested buyer might not have materialized. The fact is that no effort whatsoever was made to negotiate with parties who were interested enough to approach Whiting & Davis directly and had been put off pending the widow’s expression of intention, or with any other parties. At least, in the performance of their duty, the executors should have tried. The further fact is that the widow, although not obliged to keep her stock or buy testator’s stock and participate further in the conduct of the business, did not hesitate to continue the business for herself. Her act was not of liquidation but continuation of the business. This asset could have been offered for consideration to a prospective purchaser of testator’s stock. As *750 stated by Judge Cabdozo, also discussing an uncertain privilege of a business as an element of good will: 1 ‘ The question is not whether the buyer would be willing to pay much or would be making a wise bargain. The question is whether a reasonable man would be willing to pay anything ” (Matter of Brown, 242 N. Y. 1, 11, supra; emphasis supplied). At any event, an effort had to be made even if it proved unsuccessful. The presence of a minority interest in the corporation may not have been a problem. A capable business woman, such as the record shows the widow to have been, is more an asset than a liability especially when the merchandise is to be sold to women consumers. It is conceivable that a purchaser might have been found willing to buy a controlling interest in a business which showed substantial profits for several years past.
The claim, therefore, that no purchaser of testator’s stock possibly could be found and that no effort to do so was called for by the circumstances cannot be accepted. It is not supported by any proof in the record whatsoever, direct or indirect. The burden of proof in justifying the failure to account for a possible estate asset which involves self-dealing is upon the fiduciary. The complete failure of the fiduciary to offer such proof compels the court to find that the executors have not met the burden required of them (Matter of Hubbell, 302 N. Y. 246; Matter of Silkman, 121 App. Div. 202, affd. 190 N. Y. 560, supra; Matter of Valverde, 148 Misc. 49, affd. on reargument 347, affd. 242 App. Div. 653).
The court concludes that there is ample evidence in the record to establish the finding that the liquidation of the corporation along with the estate’s interest therein as carried out by the executors involved a conflict of interests, self-dealing and dereliction of duty on their part with respect to an asset to which the widow personally and alone benefited to the detriment of the estate. Consequently, the executors must be held chargeable with the amount of loss sustained by the estate in their failure to account for the good-will value of testator’s shares of stock and for the profits reaped by the widow as a result thereof (Matter of Ryan, 291 N. Y. 376; Matter of Brown, 242 N. Y. 1, supra; Matter of Silkman, 121 App. Div. 202, affd. 190 N. Y. 560, supra; Matter of Vivanti, 138 App. Div. 281, appeal dismissed 200 N. Y. 513; Matter of Borden, 95 Misc. 443; Matter of Shehan, 285 App. Div. 785; Matter of Spingarn, 5 Misc 2d 36, supra; Matter of Bradley, 143 N. Y. S. 2d 264; cf. Matter of Arnay, 18 Misc 2d 266; Matter of Halle, 103 Misc. 661; Matter of Bolton, 121 Misc. 51; Matter of Gorsline, 225 App. Div. 720; *751 Thursby v. Kirby, 171 Misc. 310; Matter of Dupignac, 123 Misc. 21, affd. 211 App. Div. 862; Matter of Welch, 77 Misc. 427).
In determining good-will value of a business the approved method is to obtain the average yearly net profit extending over a period of years, allowance being made for interest on capital invested, for personal drawings and for the loss of service of a deceased partner or principal where that service was of special and inseparable advantage to the business undertaking, and to multiply said profit by a number of years ’ purchase having due regard to the nature and character of the business (see cases, supra).
To avoid the expense of a further reference, the court will consider the Referee’s report on this question. The Referee’s report indicates an average yearly net profit of Max Tannenbaum Co., Inc., over a five-year period of about $75,000. This includes the salaries of testator and his wife but not interest on capital. Deducting the latter would leave a net of approximately $70,500. The court will adopt a two years’ purchase in view of the nature of the business and the Whiting & Davis agency, plus the fact that the continuation of the agency was conditioned, at least at the beginning, upon the widow’s participation in the business. Thus its good will value unaccounted for by the executors is in the sum of $141,000 and the estate’s share therein is fixed in the sum of $71,400, for which the executors are to be surcharged.
Another surcharge must be made in connection with the liquidation of the estate inventory by reason of the widow’s retention of the sum of $9,462.96 out of the proceeds of the sale of a major portion thereof for expenses of sale. Under the executors’ agreement of October 28, 1955 the widow was to keep for her selling and business overhead expenses a sum equivalent to the ratio not exceeding 17% between the total amount of expenses of the business and the total amount of merchandise sold in the business during the two months of liquidation. The ratio as later computed was 14.767% on the basis of $31,745.47 expenses and $214,975.48 total sales. Applying said ratio to the proceeds of estate inventory sold in the sum of $64,081.79, the widow deducted expenses of $9,462.96 and accounted for a net of $54,618.83 plus unsold inventory at cost in the sum of $32,-460.01, or a total of $87,078.84, compared with the estate inventory valued mostly at cost before liquidation of $73,466.37. The executors therefore point to a profit of $13,612.47 to justify their action in this respect. It may be conceded, as argued by the executors, that the sale of estate inventory by the widow at regu *752 lar prices in connection with the business as continued by her was for the best interests of the estate. If so, they were merely doing their duty to employ the best available means of liquidation. But why this course was not applied also to the remaining portion of the estate inventory which she retained at cost is not clear except for the arbitrary limitation of two months set for liquidation. Presumably at least some of this merchandise was sold later at regular market prices for her own benefit. It is undoubtedly also true, in view of her continuing the business and the sole distributorship for Whiting & Davis, that she would not allow the estate inventory out on the open market to compete with her own goods. She was thus acting throughout in her own interest. The objections are limited to the deduction by the widow of said sum of $9,462.96 from the proceeds of the estate inventory.
It appears from an examination of the exhibit setting forth the computation of the deduction of $9,462.96 that almost all of the items of expense including the largest item of $11,930 for salaries were constant and incurred in the widow’s own business. They apparently were not significantly increased by reason of the handling and sale of the estate inventory. The widow’s listed separate salary of $2,700 could in no event be used as a basis for an expense deduction. Aside from the fact that it may be improper without sanction of the court for an executor to accept a salary in a business involving disposition of estate assets (cf. Matter of Hirsch, 116 App. Div. 367, affd. 188 N. Y. 584), any proper compensation in connection with the sale of estate assets would be allowable only as executor’s commissions (Matter of Shenk, 125 Misc. 386).
The second largest item of expense in the sum of $9,642.74 is the amount of salesmen’s commissions paid on the total sales of the business during November and December, 1955. The record does not disclose what amount of the salesmen’s commissions, if any, were actually paid on the estate inventory sold during that period. There is no basis for applying to this item the general business expense ratio of 14.767% especially when the ratio of commissions to total sales is shown to be about 4%%, a more customary and probably the actual average commission rate in force in the business at that time.
Finally, the widow reported this deduction of $9,642.74 in her tax returns as income, specifically as “ commissions earned ”. Although it is claimed to be an inadvertent mistake, this fact practically vitiates the present contention that the deduction of $9,462.96 represents the selling and overhead expense of liquidating the estate inventory. Upon all the facts and natural *753 inferences therefrom, the deduction claimed is disallowed and the executors are surcharged therewith.
Another expense charged to the estate which is objected to is the sum of $29,115 paid by the widow to the employees of the business in December, 1955 as a Christmas bonus. This was paid pursuant to the resolutions of the directors and stockholders of October 28, 1955 and accorded with the regular past practice of the business. No attempt, however, was made to apportion this expense between the corporation and the widow’s company both of which were served by the same group of employees.
On the basis of November 1, 1955, being the date when the corporation was succeeded by the widow’s new firm, the corporation’s share of this expense for 10 months is $24,262.50 and the estate is to be charged 38/75ths thereof or the sum of $12,293. The difference of $16,822 is an improper deduction for which the executors are surcharged.
The court approves the recommendation of the learned Referee that the sum of $21,000 be deemed a fair and reasonable expenditure for decedent’s hospitalization, funeral expenses and erection of a mausoleum, and that the executors be surcharged all sums reimbursed to the widow for those purposes in excess of said amount, namely, the sum of $4,616.10. The widow, however, is entitled to retain social security benefits in the sum of $255 which she received (U. S. Code, tit. 42, § 402, subd. [i]; Code Fed. Reg., tit. 20, § 404.339; Matter of Grossman, N. Y. L. J., May 12, 1959, p. 12, col. 7 [Surrogate’s Ct., New York County]).
Since the objections to the account have not been pressed by all of the interested parties, it is important to note the distinction between cases in which credits taken or requested by a fiduciary in an account are reduced after objections and those in which new assets have been brought into an estate after objections. In the former, only the objectants benefit from the surcharge, which is limited by the extent of their interests and is shared by them proportionately. In the latter, all beneficiaries share in the surcharge and the amount thereof is not limited to the interests of the objecting parties (Matter of Koch, 184 Misc. 1; Matter of Mette, 273 App. Div. 740, affd. 298 N. Y. 789; Spence v. Niper, 22 Misc 2d 840; Matter of Buck, 184 Misc. 29; Matter of Goodliffe, 29 Misc 2d 1067; Matter of Molinaro, 140 N. Y. S. 2d 834; Matter of Christatos, 141 N. Y. S. 2d 765; Matter of Rosenbaum, 76 N. Y. S. 2d 715). Accordingly the full amount surcharged for good-will value is to be accounted for by the executors for the benefit of all beneficiaries under testator’s will, *754 but the other surcharges are limited to the amounts necessary to satisfy the shares therein of those who filed objections to the corresponding items in the account.
Another important distinction relates to the rate of interest chargeable upon the surcharged amounts. Where the failure of a trustee in his duty is willful, or characterized by bad faith, the highest rate of interest should be imposed. But where good faith and honest mistake concur, the rate of interest rests in the court’s discretion taking into consideration all of the circumstances, and where substantial justice requires it a lesser rate may be allowed (King v. Talbot, 40 N. Y. 76, 95; Matter of Ryan, 291 N. Y. 376; Matter of Hyde, 149 Misc. 291; Durant v. Crowley, 197 App. Div. 540, affd. 234 N. Y. 581, supra; Matter of Drake, 132 N. Y. S. 2d 259 and cases cited). Accordingly, with respect to all of the mentioned surcharges excepting the one for good-will value, interest shall be paid at the average rate earned by the estate upon the sums of $9,462.96 and $16,822 from January 1, 1956 and upon the sum of $4,616.10 from date of receipt thereof by the widow.
With respect to the surcharge for good-will value the record shows that the widow earned substantial profits from the business until its discontinuance in 1958, after which Whiting & Davis itself took over distribution of its products. It is difficult to arrive at a figure representing the portion of the profits of the business that can be allocated to the good-will value belonging to the estate of which the widow derived the full benefit while continuing her business and for which she along with the coexecutors would be required to account. This would entail among other things proper allowances for the loss of special services of testator on the one hand and the continuance of the widow’s special services to the business on the other (see Matter of Nial, N. Y. L. J., May 2, 1945, p. 1676, col. 5, and cases cited, McGarey, S.). Consideration is also to be given to the fact that a widow is involved, and that good faith and honest mistake on the part of at least some of the executors mixed with the haste of liquidation and failure to investigate the possibilities of selling testator’s stock. In the light of all of the facts and circumstances the executors will be required to pay interest at the rate of 4% per annum on the amount surcharged for good will from January 1, 1956. Interest upon all amounts at the prescribed rates will run to time of payment. (Matter of Hoyt, 186 Misc. 272; Matter of Dodge, 47 N. Y. S. 2d 30; Matter of Buck, 184 Misc. 29.) No commissions will be paid on the surcharged amounts and interest (Matter of Taft, 145 Misc. 435; Matter of Drake, 132 N. Y. S. 2d 259, supra; Matter of Hyde, 149 *755 Misc. 291; Matter of Silkman, 121 App. Div. 202, affd. 190 N. Y. 560).
The executors are directed to amend their account so as to set forth their final accounting in accordance with the determination herein. Since the widow alone of the executors has benefited from the actions resulting’ in the surcharges, she will reimburse the estate or the objectants as required in the surcharged amounts with interest as aforesaid. Her commissions and interest in the estate will first be applied on account of the total amount surcharged.
The respective motions herein are disposed of as follows: The report and recommendations of the learned Referee are modified in accordance with the views of the court set forth herein, and as so modified, confirmed. The objections to the account interposed by objectants and not withdrawn are correspondingly sustained or dismissed in whole or in part as the case may be, as set forth herein. The matter of fees and allowances of counsel, the Referee and the special guardian and of stenographic charges in this and the election proceedings will be determined upon submission of and inserted in the final accounting decree when noticed for settlement.