In the Matter of the Estate of MARJORIE N. MORAWETZ, Deceased.

Surrogate's Court, Albany County, June 28, 1962.

764

*Whalen, McNamee, Creble & Nichols* for executors. *Budd, Quencer, Brown & Commette* for Union College. *Cooper, Erving & Savage* for Samuel A. Marshall, Jr. *Herzog, Nichols, O'Brien & Leahy* for Lawrence H. Nott. *Hawkins, Delafield & Wood* for Arrow, Inc. *Lord, Day & Lord* for Frances N. Hemingway.

HAROLD E. KOREMAN, S. The decedent, a resident of this county, died in New York City on January 3, 1957 leaving a gross estate slightly in excess of one and one-half million dollars. Letters testamentary were issued on January 25, 1957.

In their petition herein the executors request a determination as to the validity and effect of article I (b) of the will. However, the controversy which had arisen over this provision has been compromised with the approval of the court and further discussion thereof is unnecessary.

The executors also request a determination as to whether certain shares of stock in a corporation known as Norman Vale Estates, Inc., pass to Lawrence H. Nott as the devisee of real property in Albany County, and to one Samuel A. Marshall, Jr., pursuant to an agreement with the decedent, or whether such shares constitute a part of the residuary estate.

Objections and amended objections to the account were filed on behalf of the Trustees of Union College, one of the residuary legatees. Several months after the return of the citation, and after Union College had filed its objections, the then attorneys for the other residuary legatee, Arrow, Inc., gave notification that no objections would be filed on its behalf. Thereafter considerable testimony was taken respecting some of the objections filed by Union College. Several months later objections were filed on behalf of Arrow, Inc., which were identical with those of Union College. The executors made a motion to dismiss the objections contained in the first seven paragraphs of the objections filed on behalf of Arrow, Inc. This motion was granted and an order to that effect was made and entered on November 30, 1960. At that time, decision was reserved on the question of whether Arrow, Inc., would be entitled to any benefits from a surcharge in the event any was imposed based upon the objections of Union College which were identical with those which were then dismissed. The court now determines that Arrow, Inc., is not so entitled. The first seven paragraphs of the objections

by Union College deal entirely with credits taken by the executors for various payments made by them. In such a situation only the objectant benefits from any surcharge (*Matter of Garvin,* 256 N. Y. 518; *Matter of Goodliffe,* 29 Misc 2d 1067; *Matter of Tannenbaum,* 30 Misc 2d 743, 753 and cases cited therein) and therefore, any surcharges imposed hereinafter with respect to the first seven paragraphs of the amended objections of Union College will be limited to an amount necessary to satisfy the share of that legatee.

FIRST OBJECTION. In Schedule C-1, entitled "Funeral and Administration Expenses" the executors have credited themselves with payments aggregating $601.43 to Mrs. Helen Schwarzwalder, who had been decedent's private secretary. The payments represent salary, at $59.92 per week for a period beginning just prior to the executor's appointment and continuing for approximately seven weeks and for expenses in the sum of $181.99. The testimony with respect to her services is rather brief but it appears that she was the only person available who possessed detailed information concerning the assets of the estate and the location of cancelled checks, correspondence and records of the decedent. It does not seem unreasonable for executors to retain the services of the private secretary of a person of decedent's means and activities for the period of time involved here nor do the amounts paid her appear to be excessive. Accordingly, the first objection is dismissed. (*Matter of Taylor,* 95 N. Y. S. 2d 459, 475, 476.)

SECOND OBJECTION. This concerns payments made by the executors in connection with the maintenance of decedent's co-operative apartment in New York City and its contents. The apartment itself was specifically bequeathed to decedent's nephew (one of the executors) and niece. Many items in the apartment were left to the executors to be disposed of in accordance with a list accompanying the will. Several paintings and other objects of art were specifically bequeathed to different individuals and some to a "Gallery" in Charleston, South Carolina. The remainder of the contents were left to the nephew and niece. The contents of the apartment were appraised at $63,507.

The first item under this objection pertains to payments to one Karen Lundsten, a housekeeper, amounting to $371.80. This individual had been in the employ of decedent and was a legatee under the will. She was paid the sum of $194 for services rendered during January, 1957. Since the will was not admitted to probate and letters testamentary issued until January 25, 1957, this payment by the executors was clearly proper and the objection to it is dismissed. Miss Lundsten was employed on a

day basis thereafter and worked eight days during the month of February and eight days during March. She was paid $87.80 for February and $90 for March. It was testified that she was present in the apartment whenever the appraisers or other persons were there. The executors had the duty to protect and preserve the valuable contents of the apartment, and the expenditure of these sums was not unreasonable (*Matter of Watson,* 86 Misc. 588, affd. 165 App. Div. 252, revd. on other grounds 215 N. Y. 209).

The next items are two payments to the New York Telephone Company totalling $77.24. There was no testimony given respecting this expenditure nor were the bills offered in evidence. In the absence of a showing what period of time was involved or the necessity for the expenditure, the objection is allowed and the executors surcharged in the amount of $38.62.

The next item is a payment of $39.76 for electric and gas supplied to the apartment. The executors have submitted the bill for which this payment was made, which shows the period of service as having begun on December 13, 1956. Since this date was approximately three weeks before decedent's death and more than a month before the executors were appointed, the objection is dismissed.

The next item is the payment of $26.62 to a window cleaning company. No testimony was offered regarding this payment and no necessity therefor was shown. The credit is disallowed and the executors are surcharged the sum of $13.31.

The last item under this objection relates to four payments of $828.33 each, representing the cost of maintenance of the co-operative apartment for the months of January, February, March and April, 1957. Under the will and codicil the shares of stock and the proprietary lease for the apartment itself, as well as some of the contents, were specifically bequeathed to the niece and nephew. The remainder of the contents were specifically bequeathed to several different individuals.

Title to property specifically bequeathed vests in the legatee as of testator's death subject to the right of the executors to retain possession thereof and use it, if necessary, for the payments of debts and expenses of the estate. (*Matter of Columbia Trust Co.,* 186 App. Div. 377). In this estate the executors appear to have held the apartment and its contents from their appointment on January 25, 1957 until sometime in April, 1957. During this period an appraisal of the contents and of the value of the apartment itself were made (as above stated the contents were appraised at $63,507; the apartment itself was appraised at $49,700). Of course, this was necessary for estate tax pur-

poses. The executors were required to ascertain whether the articles specifically bequeathed were in existence and whether the legatees desired to accept their bequests. It appears that the appraisers were required to make several visits to the apartment and that there was confusion over the identity of some of the bequests. The testatrix, in her will and codicil, referred to the location in her apartment of some of the oil paintings which she specifically bequeathed and their location in the apartment was thereafter changed. The advice of an art expert had to be obtained to identify some of the paintings. In the light of these circumstances and the value of the articles concerned I do not think the executors acted unreasonably in withholding the apartment and its contents from the legatees for a period of some three months after their appointment. They did not receive the formal appraisal until March 10, 1957, and the release of the contents from the Internal Revenue Department until April 4, 1957. I do not think that the fact that the nephew possessed a key to the apartment during this three-month period is of any significance, since he was also an executor. It is noted that the management corporation of the apartment house required a release from the residuary legatees before releasing control of the decedent's apartment to the specific legatees and that the objectant Union College executed such a release on May 29, 1957. It is possible that the contents of the apartment could have been removed and stored at a cost less than the maintenance charges of the apartment, but under the circumstances such a course of conduct would not have been practicable since there was confusion as to certain bequests, because they were mentioned in the will and codicil with reference to their location in the apartment. Under the circumstances of this case, the objection to these payments is dismissed. (*Matter of Searles,* 82 N. Y. S. 2d 219, 227; *Matter of Watson,* 86 Misc. 588, 601, *supra.*)

THIRD OBJECTION. The first item pertains to five payments by the executors to an individual in Charleston, South Carolina, for services rendered with respect to real property owned by the decedent in that city. The payments were made on a monthly basis, average approximately $53 per month and total $266.59. The real property was specifically devised to decedent's niece. It was appraised at $50,000. The contents of the house were appraised at $19,609.50. Several paintings contained in this house were specifically bequeathed to individuals and the remainder of the contents went to the niece.

The testimony reveals that the individual to whom the payments were made was a caretaker of the property. He took care

of the grounds and protected the estate property from vandalism and pilferage.

The executors, by accepting their nomination as such, became obliged to execute the will as to all parties in interest and as to all the property of the testatrix wheresoever situate. While the executors were not obliged to take possession of the real property which had been specifically devised nor to make actual delivery of the paintings which were specifically bequeathed (*Matter of Columbia Trust Co.*, 186 App. Div. 377, *supra*), still the executors were obliged to perform some executorial duties with respect to both such real and personal property. For example, they were required to ascertain whether the articles of personal property were in existence; to ascertain the value of both the real and personal property for estate tax purposes; to establish title to the property in the ordinary manner; i.e., by probating the will in the State of South Carolina. The payment by the executors of a reasonable sum of money for a reasonable length of time in carrying out the administration of the estate is not inconsistent with the general rule of law that a specific devisee takes the property subject to all charges. The moneys paid to the individual were for services rendered subsequent to decedent's death, were not charges upon the land and were proper administration expenses, the same as the payments to the ancillary administrator *c. t. a.* to which no objection is made. The objection to these payments is dismissed.

The other objection concerning the South Carolina property, is to the payment of the sum of $857.62 to an attorney in Charleston. That amount represents one half of the attorney's fee for services rendered in a suit involving the boundary line of the real property which decedent owned. Objectant contends that the specific devisee, having accepted the property, is deemed to have accepted it with all the burdens attached and that would include the entire bill rendered by the attorney.

It appears that the decedent retained the attorney some years before her death in regard to a controversy which arose concerning the boundary line between her property in Charleston and that of the property abutting on one side. A suit was commenced by the attorney in February, 1955, and other services were rendered by him prior to decedent's death. After the death, there was a substitution of the specific devisee as plaintiff in the suit and judgment was taken by default in favor of the devisee. The attorney's bill for services was $1,500 plus $215.25 expenses. The latter figure includes a charge of $200 for a survey which, objectant asserts was made in the month of November, 1957, for the specific devisee. That assertion is probably based

upon the fact that the statement of the surveyor is dated November 21, 1957. However, there was no proof offered as to when the survey was actually made. The total bill was divided between the estate and the specific devisee. Although the division of the bill seems to have been done in an informal manner, it was a practical division and does not appear to have been prejudicial to the estate. The objectant cites no authority that the attorney's fee was a charge upon the land, and there is authority that section 250 of the Real Property Law does not apply to foreign real estate (*Matter of Blackinton,* 153 Misc. 580). The objection to this payment is dismissed.

FOURTH OBJECTION. At the time of her death, decedent was the owner of considerable property in Guilderland, New York. It consisted of some 700 acres of land upon which were many buildings including five houses, some of which were occupied by tenants, and the main house which had been occupied by decedent. All of the real property was specifically devised to decedent's nephew. In addition, all of the personal property contained thereon, including the furniture and furnishings, were bequeathed to the nephew.

The first group of items objected to, as regards this property, pertains to moneys paid by the executors for maintenance charges for some three months after their appointment. Without detailing the expenditures, they include payments to a housekeeper, a laundry, a grocer, a utility, an oil company, a dairy and several service or tradesmen for services and materials furnished subsequent to decedent's death. As set forth in detail on pages 18 and 19 of objectant Union College's main brief the total of these payments is $1,577.90.

The executorial duties required with respect to this property were not such as would interfere with its use and enjoyment by the devisee and legatee who, as mentioned before, was one of the executors. Unlike the apartment in New York which contained many valuable articles which had been specifically bequeathed to different persons, in this instance the devisee and legatee was the same individual. Under such conditions, absent some unusual circumstances, it is my opinion that the appraisal for tax purposes and other incidental visitations by the executors and others did not justify the expenditures to which objections have been taken. Therefore, the objections to those payments are sustained. The executors are surcharged one half of the total, or $788.95.

The next item under this objection is the payment, by the executors, of certain taxes on the real estate which had been specifically devised to the nephew. The taxes in question became

due and payable a few days before decedent's death. The total involved is $1,931.16. Subdivision 2 of section 212 of the Surrogate's Court Act, entitled "Payment of debts", provides for payment by the executor of "Taxes assessed on property of the deceased previous to his death". However, in *Matter of Pinkney* (170 Misc. 645, affd. 257 App. Div. 862, 257 App. Div. 985), it was determined that section 212 has been modified by section 250 of the Real Property Law as amended in 1937, with the result that taxes assessed prior to decedent's death must be borne by a devisee. Upon the authority of that case the objection is sustained and the executors are surcharged one half the total payment, or $965.58.

The next item under the FOURTH OBJECTION pertains to payments to a contractor and builder for repairs and alterations to buildings on the property in Guilderland. In its amended objections Union College originally objected to three items, but in its brief has withdrawn its objection to one payment of $2,200 and to all but $60 of a payment of $788. The objections remaining are to the $60 and to another payment of $1,247. These objections are sustained. The $60 payment represents an increase over the sum of $728 which had been agreed upon by the decedent with the contractor for certain repairs to the real property. The executors had no authority to pay any amount in excess of the contract price. The payment of $1,247 to the contractor was also for repair work. It appears that decedent had agreed upon that amount for the work which was to be performed but that only a minor portion of the work was done before her death, and none of the materials were purchased before then. No testimony was offered as to the value of the work performed prior to her death and, therefore, the entire amount will be disallowed as a credit. The executors are surcharged one half of the sums objected to or $653.50.

FIFTH OBJECTION. This objection is addressed to the payment by the executors of sums totalling $160.15 for various forms of insurance for employees who were retained at the co-operative apartment and at the real property in Guilderland, New York. Although the objections to the retention of the private secretary and the housekeeper at the co-operative apartment have been dismissed, the form of the account filed does not permit the determination of what part of the $160.15 is attributable to them. This objection is sustained for the same reasons as set forth under the FOURTH OBJECTION. The executors are surcharged one half the amount or $80.08, with the right reserved to them, if they are so advised, to furnish proof of the cost of insurance for the employees retained at the co-operative apartment,

SIXTH OBJECTION.  This objection pertains to a payment to one James Hemingway of the sum of $167.74 for funeral expenses. It appears that decedent's funeral was held in New York City and her remains were taken by train to Baltimore, Maryland, for interment.  The payment which is objected to is, apparently, reimbursement for the cost of transportation by rail, from New York City to Baltimore and return, of a group of six or seven relatives and close friends of the decedent for the purpose of attending the interment rites.  The total funeral expenses, including this payment, amounted to $1,004.44 and, in view of the size of the estate, could hardly be termed unreasonable.  The payment of the transportation charges is not unlike the payment of the charges for automobiles for bearers and close relatives in a funeral cortege which are customarily included in the funeral expenses.  The objection is dismissed.

SEVENTH OBJECTION.  This objection is addressed to two payments, totalling $81, for packing and shipping specific bequests.  This objection must be sustained.  A specific legatee must take the bequeathed article as and where it is.  (*Matter of Columbia Trust Co.*, 186 App. Div. 377, *supra*; 6 Jessup-Redfield Surrogates' Law and Practice, § 4716.)  Accordingly, the expense of packing and shipping specific bequests should be borne by the legatee.  The executors are surcharged one half the sums paid or $40.50.

THE LAST OBJECTION, which is taken by both residuary legatees, is to the failure of the executors to collect from one Samuel A. Marshall, Jr. and to account for the sum of $21,000 which testatrix had delivered to Marshall during her lifetime; to the transfer by Marshall of the $21,000 to a corporation; to the acceptance by the executors of 1,500 shares of the stock of the corporation and the expenditure of the said $21,000 by the corporation some six months after the decedent's death to perform two alleged contracts.  The residuary legatees urge that the executors be directed to reconstitute principal of the estate in the amount of $21,000 plus interest and the 1,500 shares of stock transferred to them individually.  The disposition of this question will also answer the request by the executors, in the petition herein, for a determination whether the 1,500 shares of stock pass to Lawrence H. Nott as devisee of real property in Albany County (art. III of the will) and 700 shares to Marshall pursuant to an agreement with decedent or whether said shares of stock constitute a part of the residuary estate.

It appears that, in the Summer before her death, Mrs. Morawetz became concerned over the use of the name " Normanvale Construction Corporation " by a real estate developer who had

acquired land near her ancestral home of Guilderland, which had for many years been known as "Norman Vale". She directed Samuel A. Marshall, Jr., a resident and manager of the Guilderland estate, to take steps to protect the use of the "Norman Vale" name. After contacting a law firm in Albany (which later became attorneys for the executors), a corporation known as Norman Vale Estates, Inc. was organized on August 2, 1956.

On August 20, 1956, Marshall, in the name of the corporation, contracted to buy approximately 66 acres of land near "Norman Vale" and made a $1,000 down payment with money theretofore given him by Mrs. Morawetz. A closing date was fixed at November 1, 1956 and in September, Mrs. Morawetz advanced $21,000 to Marshall to effectuate the purchase. The closing date was informally postponed because of title questions and on December 28, 1956 the corporation organized and held a directors' meeting at which notice was taken of the purpose of the corporation's formation and Marshall's efforts to carry out the intentions of Mrs. Morawetz and the corporation. The contracts were ratified and 1,500 shares of stock were issued to Mrs. Morawetz and 700 to Marshall, in recognition of his labors in behalf of the corporation and Mrs. Morawetz.

On January 3, 1957 Mrs. Morawetz died and on June 11, 1957, title to the property was closed. During the same month 1,500 shares of stock were transferred to the estate of decedent.

The court finds and determines that the executors were justified in permitting the real estate contract to be concluded. It had been entered into prior to Mrs. Morawetz' death and the closing date had been extended (informally, but consistent with the common practice of attorneys in this area) during her lifetime. The whole process of forming a corporation and acquiring land had been initiated by her and her intent is, therefore, obvious. In addition, it appears that responsible representatives of both residuary legatees met with the executors and their attorneys (also the attorneys for the corporation) on March 18, 1957; that various matters were discussed, including the corporation and the real estate transaction, and that no objection was made to the corporation completing the purchase. The executors, therefore, will not be directed to reconstitute principal in the amount of $21,000.

The next issue to be determined is whether Marshall should be permitted to retain the 700 shares of stock which were issued to his nominee on December 28, 1956 and transferred to him on May 6, 1957. I find and determine that Mrs. Morawetz had made an agreement that Marshall should receive one third of the stock of the corporation in return for his efforts with respect to the

formation of the corporation and the acquisition of the land. She communicated this fact to Colonel McNamee, as appears from the testimony and the minutes of the meeting of December 28, 1956. She had turned over to Marshall the sum of $22,000 and, although on the date of the meeting the $21,000 remaining, after the deposit on the land contract had been paid, was in Marshall's personal account, it appears from the testimony that everyone considered Marshall the agent of the corporation. The minutes of the meeting state that "Mrs. Morawetz had paid to the corporation the sum of $22,000.00," and no corporate depository had been designated before that time (Dec. 28, 1956). Therefore, the corporation had received consideration for the issuance of the stock. I find, from the testimony, that Marshall, prior to that date, had expended time and effort with respect to the formation of the corporation and the negotiation for the purchase of the 66 acres. A resolution adopted at the meeting ratified his action in executing the land contract in the name of the corporation. I determine, therefore, that Marshall is entitled to retain the 700 shares of stock which were issued to him during the lifetime of decedent.

The remaining question to be determined, is the disposition of the 1,500 shares of stock of Norman Vale Estates, Inc., presently standing in the name of the estate.

In article III of the will it is provided, in part, as follows: "I give, devise and bequeath (1) To my nephew Lawrence Hopkins Nott, if he should survive me, all my right, title and interest in and to the following described lands and premises located in the Town of Guilderland, Albany County, New York, including the buildings and improvements thereon, together with all power vehicles, machinery, farm implements, accessories, equipment, furniture and furnishings, automobiles, live stock, and other articles of personal property located upon, pertaining to or used in connection with such lands and premises and belonging to me, (a) My ancestral home 'Norman Vale' with the tract of land upon which it stands    *   *   *   (b) The property known as the 'Cooper House'   *   *   *   (c) The property known as the 'Dutch House'   *   *   *   (d) All other parcels of land, owned by me in Albany County, New York."

From the quoted provisions of the will it is clear that testatrix intended, when it was executed, that her nephew should receive all real estate owned by her in Albany County at the time of her death. Article III details the real estate in Albany County which she owned when the will was executed and then follows with the provision that "all other parcels of land owned by me in Albany County, New York" should pass to her nephew.

Thus, testatrix provided for the devise to her nephew of any real property which she might acquire in Albany County after the execution of the will.

To effectuate an intent so clearly expressed courts have often disregarded the corporate form. (*Matter of Friedman,* 177 App. Div. 755; *Matter of Cartledge,* 118 Misc. 131, affd. 203 App. Div. 899, affd. 236 N. Y. 515; *Matter of Winburn,* 136 Misc. 19.)

From the uncontradicted testimony and exhibits which were received in evidence concerning the formation of the corporation known as Norman Vale Estates, Inc., it seems clear that the only reason for its formation was to conceal the identity of Mrs. Morawetz in the acquisition of the 66 acres of land in the Town of Guilderland, Albany County. It seems clear, also, that Mrs. Morawetz did not concern herself with the mechanics of the corporation. She had become agitated over the use of the name Normanvale by a real estate developer because her home in Guilderland had, for many years, been known as " Norman Vale ". In her will (art. III [a]) she referred to it as " My ancestral home ' Norman Vale ' " and, as evidence of her attachment to the property stated: " It is my hope that my said nephew shall retain ownership of our ancestral home Norman Vale and that he shall not part with the ownership of the same during his lifetime." When she became concerned she directed her estate manager to take steps to protect the name. He was advised by attorney McNamee that a corporation should be formed and real property acquired in its name. It appears that the corporate form was but a fiction between Mrs. Morawetz, as the dominant stockholder, and the land which was acquired by the corporation. To all intents and purposes, when testatrix provided the $1,000 to be used as the deposit when the land contract was signed in the name of the corporation *she* was entering into the contract, and when she turned over $21,000 to her estate agent to be used to complete the contract that money was converted into real property. She had divested herself of ownership of the money because, as stated in the minutes of the corporate meeting of December 28, 1956, she " had paid to the corporation the sum of $22,000.00 ". The fact that at the time of the meeting and on the date of her death a few days later the balance of $21,000 was on deposit in Marshall's name does not change the result. The corporation did not designate depository until the meeting, and testatrix was issued shares of stock immediately following the meeting. Thus, the shares of stock now standing in the name of the estate actually represent ownership of the real property and pass to the devisee under article III of the will. I hold, also, that the property passes to the devisee

free of any " lien for unpaid purchase money " as that term is used in section 250 of the Real Property Law.

In accordance with the foregoing, the executors are surcharged the following amounts with interest at 4% from the dates indicated: pursuant to objection No. 2 the sum of $51.93 from April 10, 1957; pursuant to objection No. 4 the sum of $788.95 from April 1, 1957, the sum of $965.58 from January 25, 1957 and the sum of $653.50 from April 15, 1957; pursuant to objection No. 5 the sum of $80.08 from May 1, 1957 and, pursuant to objection No. 7 the sum of $40.50 from October 1, 1957.

The executors are directed to amend their account in accordance with the determination herein. Since the nephew, Lawrence Nott, alone of the executors has benefited from the actions resulting in the surcharges imposed because of objection No. 4, he will reimburse the estate or the objectant Union College, as required, in the surcharged amounts with interest as aforesaid. (*Matter of Tannenbaum,* 30 Misc 2d 743, 755, *supra.*)

The matter of fees and allowances, including that of the special guardian, will be determined upon submission of the decree when noticed for settlement.