S. Samuel Di Falco, S.
The principal objection to the account of the administratrix relates to the sale of the decedent’s interest in a business. The decedent and another were copartners in a business which dealt in optical goods. The partnership purchased frames, cases and other goods and sold them to retail dealers. The partnership did no manufacturing. Each of the copartners had his own territory and list of customers, and the success of the business depended upon the sales efforts of both of them. The partnership agreement provided that upon the death of either partner leaving a widow surviving, the partnership should continue for a period of six months during which the survivor should decide whether the copartnership should continue with the widow of the decedent as a partner or whether the surviving partner would purchase the interest of the deceased partner “ at its full value ”. It provided further that in the event that the surviving partner and “ the heirs or personal representatives of the deceased partner ” could not agree upon the valuation of the deceased partner’s share, the valuation shall be fixed and determined by arbitration in a manner therein set forth.
The widow of the decedent became administratrix of his estate. As his personal representative she entered into an agreement *268 with the surviving partner for the sale of the business to bim. They finally fixed the net value of the business at $71,581.94. After providing for a reserve of 4% for bad debts, obsolescence, damage, and so forth, the value of the decedent’s one-half share was fixed at $34,560.
The surviving partner testified that he did not wish to continue in a partnership as provided in the agreement because the decedent was survived by five brothers and a sister who claimed an interest in the business and the efforts of so many interested parties to have a voice in the conduct of the affairs would create an intolerable situation. Hence he did not wait the full six-month period before making his decision. Moreover, the surviving partner could see no basis for ascribing any value to the good will of the business. He testified that his own efforts produced two thirds of the customers and 75% of the profits. His ability to retain the decedent’s customers would depend upon future developments. Therefore he refused to include in the valuation any sum for good will. He said that if the parties could not come to an agreement on a sale to him, he might prefer to liquidate the business.
There were extended negotiations between the two parties and their attorneys. In the course of these negotiations the widow expressed an intention of going into the same business in partnership with another person. She had in her possession a list of her husband’s customers. When the husband had started the business as sole proprietor, the office and clerical work had been performed at home by his wife. When the decedent entertained customers in New York, his wife assisted him. She thus became acquainted with his customers and the operation of the business. There was reasonable basis for the apprehension that the widow could control a portion of the customer list out of their friendship with her husband. There were discussions between the parties with respect to elimination of the threatened competition, and offers and counter offers. Finally it was agreed that the surviving partner would pay the widow $14,500 in return for her agreement not to engage in such business for a period of four years, not to solicit customers of the firm, to surrender to the surviving partner the list of customers in her possession and not to disclose the names on such list to anyone for competitive purposes.
The two agreements — the one made by her as executrix and the one made personally — were executed at the same time. The payment was made to her at the very same time as the initial payment was made to the estate. Obviously the two contracts were parts of the one transaction.
*269 Three of the brothers of the decedent have filed objections to the account. Their second objection is that the full value of the share was greatly in excess of $34,560 and that the administratrix was negligent in making the sale at that figure. The second objection is to her failure to report the sum of $14,500 as part of the assets of the estate. The fourth objection is to her failure to obtain for the estate the value of the good will of the business. The objectants ask that she be surcharged in the amount found to be the reasonable value of the good will of the business and also the difference between what she received and what is determined to be the full value of the business. They demand also that she account for the sum of $14,500 as an asset belonging to the estate.
The second and the fourth objections are overruled. There is no merit to the contention that the administratrix should have insisted upon continuance of the business for six months and that the profits for that period plus the book value of the interest would have exceeded the amount for which the decedent’s share was actually sold. The decedent died on June 9, 1957. The agreement of sale was dated July 18, 1957. It is true that both parties could have agreed to carry on the business as partners for six months. It is not at all certain what the result would have been. In any event, however, the partnership agreement did not explicitly oblige the parties to continue the business. In view of the purpose of some of the brothers to have a voice in the management of the business, the surviving partner quickly decided that he would not continue the partnership. The administratrix was faced with the alternative of selling to the surviving partner or having the business liquidated. It is true that she also might have interpreted the contract as requiring the partner to continue the business for six months and threatened to enforce such provision against him. But in view of his unwillingness to continue' the partnership, in view of the lack of harmony that would probably exist among the surviving partner, widow and the distributees, and in view of the loss of the decedent’s personal services, the prospects for successful operation of the enterprise could not be said to be attractive. Under such circumstances the agreement to sell the business as of the date of the decedent’s death cannot be said to have been imprudent. Indeed, any other course of action might well have resulted in damage to the estate. The surviving partner and the widow carried on the negotiations in good faith, each striving to protect his or her respective interests. The widow is entitled to 50% of the net estate. Putting aside for the moment the matter of the additional payment of $14,500, the widow was *270 interested in getting as high a price for the sale of the business as was possible. There is no proof that the full value of the business was any greater than the amount realized by the widow. There is no evidence to justify a finding that the estate suffered any damage or loss from the immediate sale of the business.
The matter of the separate agreement for payment of $14,500 to the widow personally presents a somewhat different issue. ‘ ‘ Many forms of conduct permissible in a workaday world for those acting at arm’s length, are forbidden to those bound by fiduciary ties. A trustee is held to something stricter than the morals of the market place. Not honesty alone, but the punctilio of an honor the most sensitive, is then the standard of behavior. ’ ’ (Cardozo, Ch. J., Meinhard v. Salmon, 249 N. Y. 458, 464.) Strict adherence to the rule of undivided loyalty has been insisted upon by the courts without exception. In City Bank Farmers Trust Co. v. Cannon (291 N. Y. 125, 131) the Court of Appeals reiterated the governing rule: “ The standard of loyalty in trust relations does not permit a trustee to create or to occupy a position in which he has interests to serve other than the interest of the trust estate. Undivided loyalty is the supreme test, unlimited and unconfined by the bounds of classified transactions.” (Emphasis added.) Professor Scott states the rule as follows: “ A trustee occupies a position in which the courts have fixed a very high and very strict standard for his conduct whenever his personal interest comes or may come into conflict with his duty to the beneficiaries. As long as he is not acting in his own interest the standard fixed for his behavior is only that of a reasonable degree of care and skill and caution. But when the trustee acts in his own interest in connection with the performance of his duties as trustee, the standard of behavior becomes more rigorous. In such a case his interest must yield to that of the beneficiaries.” (2 Scott, Trusts [2d ed.], p. 1275.)
The rule of undivided loyalty operates to prevent a fiduciary from entering into competition in business with the estate which he represents. In the Restatement of Trusts, the rule is stated thus: “ A trustee violates his duty to the beneficiary if he enters into a substantial competition with the interest of the beneficiary” (§ 170, subd. 0). In the case of a continuing trust which carries on the business, the fiduciary may be enjoined from competing with it or compelled to resign. (2 Scott, Trusts [2d ed.], p. 1269 and cases cited.) In cases where the fiduciary sells the estate’s interest in the business, the rule of undivided loyalty is just as strictly enforced. In Boorne v. Wicker ([1927] 1 Ch. 667, 676) the deed of partnership provided for the sale of the business upon the death of any partner and the enforce *271 ment of that contract was before the courts. One of the executors had been employed in the business and having been discharged and having accepted employment with another, he canvassed the customers of the old firm. Adverting to the general rule which prevents the vendor of a business from soliciting the customers of that business and to Lord Macnaghten’s statement of the reason for the rule (see Trego v. Hunt, [1896] A. C. 7, 25; 5 Williston, Contracts [Rev. ed.], § 16.40, p. 4593), Justice Tomlin said: “ In what terms the principle is to be framed is another matter, but I am satisfied that in a case such as this there is no justification for an executor at one and the same time completing the contract and destroying the subject-matter of it. Still less does his conduct find favour in my eyes when I know that he has in fact, or may in fact, have acquired knowledge of the business by reason of the position which he himself in the past held in it.” The executor was temporarily restrained from soliciting customers of the firm pending final decision on the matter of the sale.
In Matter of Offen (45 N. Y. S. 2d 348) the executor, pursuant to authority granted in the will, continued the installment sales business which the decedent had operated up to the time of Ms death. The executor under the decedent’s will had never been engaged in that type of business prior to his appointment, but he had on occasions assisted the decedent in his business. While acting as executor, he engaged in the same kind of business and made sales to customer accounts of the estate and to new customers. Surrogate Henderson said (p. 350): “It is unquestionable that, with respect to the customer accounts of the estate, the estate had the right of continued enjoyment therein and in the continued profit to be derived therefrom. * *■ * The action of Abraham Offen wMle an executor, in selling for his own benefit and also to new customers as part of his business, was directly contrary to his duty as an executor. As such a fiduciary he was bound to so deal with estate property so as not to gain any advantage directly or indirectly for himself. All the power and the opportunity which the possession of the trust fund gave him should have been used to the advantage and profit of the estate and not for his own personal gain and profit. * * * There can be no abuse of special opportunities growing out of his relationship. ’ ’ Tested by these principles, the administratrix of this estate failed in her duty to the beneficiaries. Any list of customers which she had in her possession belonged to the decedent. It does not appear whether the list was actually compiled by the decedent or was drawn up by the widow on the basis of her knowledge of decedent’s activities and his customers. *272 Concededly, however, it was the customer, list of the decedent, and as such it was a part of the business. It is true that the surviving partner refused to ascribe any value to the good will of the business, and quite possibly he did not count too much on his ability to hold all of his deceased partner’s customers. It stands established, however, that the decedent’s customer list did have a monetary value, especially in the hands of his widow. In one aspect the list might be regarded as one of the items constituting good will, for good will “has been defined as ‘ The probability that the old customers will resort to the old place ’ ”. (5 Williston, Contracts [Rev. ed.] § 1640, p. 4591.) But whatever’it may be called, the list of customers belonged to the decedent as incidental to Ms interest in the business. It had a value in connection with the business and where the purchaser of the decedent’s interest was willing to pay something extra for it, the decedent’s personal representative was obliged to include it in the sale of the decedent’s interest in the business. So long* as she remained in office as administratrix, she had no right to use the decedent’s list for her own personal profit. Moreover, she could not remain in office as fiduciary and enter into personal competition with the business in which the estate had a one-half interest. (Thomson v. Allen [1930], 1 Ch. 203; Matter of Offen, 45 N. Y. S. 2d 348, supra; 2 Scott, Trusts [2d ed.], § 170.23.) Nor could she dispose of the estate’s interest in the business and at the same time endeavor to recapture for her own benefit the substance of what she had sold for the estate. If the customer list is a part of what is sold, there would be of necessity an implied agreement on the part of the seller not to trade upon the customers’ loyalty to the decedent and to do no act that would tend to deprive the vendee of the fruits of his bargain. As Lord Macnaghten so well said: “ It is not right to profess and to purport to sell that which you do not mean the purchaser to have; it is not an honest thing to pocket the price and then to recapture the subject of sale, to decoy it away or call it back before the purchaser has had time to attach it to himself and make it his very own.” (Trego v. Hunt [1896], A. C. 7, 25, supra; Von Bremen v. MacMonnies, 200 N. Y. 41, 51.)
When during the course of the negotiations for the sale of the business, the administratrix revealed an intention to use the customer list for her own benefit and to go into business in competition with the surviving partner, she was depreciating the value of the asset which she was offering to sell as admimstratrix. Her duty was to get the best price possible for the estate. She deliberately put herself in a position where her personal *273 interest adversely affected the value of the estate’s property. She must account to the estate for the benefit which she received individually as a result of her violation of her trust duties.
It may very well be that an agreement by the widow not to compete with the vendee for a stated period of time after the completion of the estate administration could fairly' be said to be outside the estate’s interests and a proper subject for personal bargaining. It is not necessary to decide that point in this proceeding. The administratrix was employed and she had spent her business life in an entirely different field except for the help which she sometimes gave her husband. She apparently posed no threat to the partnership’s business except to the extent that she could trade on the loyalties to her husband of some of his old customers. The elimination of her from a field of business which she had never really entered had no real value apart from her possession of the customer list and her possible ability to hold their friendship. The negotiations over the customer list appear to have been vigorously conducted on both sides and to have resulted in the highest price obtainable. At no time did the parties attempt to assign a value to the agreement not to compete in the future as distinguished from the sale of the customer list and the agreement not to solicit those named. It seems to the court that the former portion of the contract had no real value apart from the latter. The court is also of the view that the sum of $14,500 plus the sum of $34,560 represents the full value of the decedent’s interest in the business.
The court therefore holds that the administratrix is accountable for the sum of $14,500 and her account is surcharged in that amount. The second objection of the distributees is sustained.
The first objection of the distributees has been withdrawn upon the agreement of the administratrix to sell the shares of stock.
The compensation of the attorney for the administratrix is fixed and allowed in the sum of $2,800, which is the amount requested in the petition and set forth in the citation. In his affidavit of services he requests further compensation for services rendered in the contested accounting. That request’is not properly before the court because those of the interested parties not appearing in this proceeding have had no notice of this additional application. The denial of further compensation is without prejudice to the attorney to submit a bill of costs or to proceed as required by section 231-a of the Surrogate’s Court Act. The disbursements of the attorney are allowed in the sum of $80.25. Any other necessary disbursements made by him *274 may be taxed in a proper bill. Tbe fixation of the fee and disbursements disposes of objection sixth.
The reasonable compensation of the accountant is fixed and allowed in the sum of $500. This ruling disposes of the fifth objection.
Submit decree on notice settling the account accordingly.