■ In the Matter of the Estate of MAX TANNENBAUM, Deceased. CHASE MANHATTAN BANK et al., as Executors of MAX TANNENBAUM, Deceased, et al., Appellants-Respondents; J. JOSEPH TANNENBAUM et al., Respondents-Appellants; FEDERATION OF JEWISH PHILANTHROPIES OF NEW YORK et al., Respondents.— In a proceeding to judicially settle the executors' intermediate account to which certain objections were filed, the several parties cross-appeal as follows from a decree of the Surrogate's Court, Kings County, rendered November 2, 1962 after trial, upon the decision and opinion of the Surrogate (30 Misc 2d 743), settling the account: (1) The executors appeal from so much of the decree as denied their motion to confirm *in toto* the Referee's report upon the objections to the account; as sustained certain of the objections, rejected certain of the Referee's recommendations and surcharged the executors with the sum of $71,400 for the claimed good will value of the decedent's interest in the corporation, Max Tannenbaum & Co., Inc., and with the sum of $9,462.96 for the claimed deduction from the sale proceeds of decedent's share of the corporation's inventory; as directed Sophie Tannenbaum, decedent's widow and one of the executors, to reimburse said sums to the estate with interest thereon at stated rates for stated periods; and as directed that the account be settled accordingly. (2) Sophie Tannenbaum, the decedent's widow, appeals individually from so much of the decree as directed that the executors be surcharged with the said two sums and that she reimburse the estate therefor with interest thereon; as rejected the Referee's report with respect thereto; and as settled the executors' account accordingly. (3) J. Joseph Tannenbaum, decedent's brother and a legatee, appeals from so much of the decree as fixed only the sum of $71,400 for the good will value of decedent's interest in the corporation, and as required Sophie Tannenbaum to reimburse the estate for said sum with interest thereon at 4%, on the ground that the sum fixed for the good will is inadequate and that the rate of interest should be 6%; as failed to surcharge the executors with the further sum of $212,038.62 for the proceeds derived personally by decedent's widow Sophie Tannenbaum through her utilization of such good will; as limited other surcharges and failed to make further specified surcharges; and as made other directions adverse to him with respect to the account. (4) Joseph J. Dreyer, as special guardian for the persons named, appeals from so much of the decree as fixed only the sum of $71,400 for the good-will value of decedent's interest in the corporation and as surcharged the executors with such sum plus interest thereon at 4%, on the ground that such sum is inadequate and that the interest rate should be 6%; as failed to surcharge the executors with the proceeds derived, personally by decedent's widow through her utilization of decedent's good will in the corporation; as failed to surcharge the executors with interest at 6% on the said surcharge of $9,462.96; as limited other surcharges and as failed to make further specified surcharges; and as made directions adverse to the interests of the persons represented by the special guardian. Decree modified on the law and the facts as follows: (a) By striking out the Fourth decretal paragraph surcharging the executors $71,400 for the good-will value of the

decedent's interest in the corporation and directing that the widow reimburse said sum to the estate with interest thereon at 4%; and by substituting therefor a paragraph declaring that said good will had no value for which the executors are required to account. (b) By adding a decretal paragraph to be called 4-A, directing that the executors shall further account with respect to the net proceeds, if any, derived by the widow as a consequence of her acquisition at the cost price, of the $32,460.01 portion of the estate's unsold inventory. (c) By amending the Fifth decretal paragraph surcharging the executors $9,462.96 for the deduction from the sale proceeds of the estate's share of the corporation's inventory and directing that the widow reimburse the estate in such amount with interest thereon, so as to reduce said sum to $4,977.24 and so as to direct that the widow reimburse $4,977.24 to the estate but without the addition of any interest on said sum. (d) By directing that the summary of the executors' intermediate account and its several schedules, as set forth in paragraph Fourteen of the decree, be amended accordingly. As so modified, the decree is affirmed, with costs to all parties appearing separately and filing briefs, payable out of the estate, and the matter is remitted to the Surrogate's Court, Kings County, for such further hearings and proceedings as may be required for the rendering of a further supplemental account and for the entry of a decree not inconsistent herewith. Findings of fact contained in the decision of the Surrogate (30 Misc 2d 743) which may be inconsistent herewith are reversed, and new findings are made as indicated herein. In our opinion: (1) Under the facts and circumstances of this case, there was no warrant for assessing any good-will value to decedent's interest in the corporation, Max Tannenbaum & Co., Inc., and penalizing the executors for having adopted a plan of liquidation pursuant to which the widow executrix was enabled to take over the corporation's business upon due payment therefor, with the one exception noted in the next item. (2) The executors should be made to account, however, for the net profits, if any, derived by the widow from the portion of the estate's unsold inventory of the corporation which she, as successor to the corporation, elected to purchase at its cost price of $32,460.01. (3) The executors were entitled to reimbursement of expenses from the sale proceeds of the estate's share of the inventory of the corporation, not in the amount of $9,462.96, as claimed, with which they were surcharged, but in the lesser sum of $4,977.24, as hereinafter indicated. With respect to item No. 1: As of the date of decedent's death, there were 75 issued and outstanding shares of stock of the corporation. The decedent owned 38 shares, and the widow 37 shares. The corporation's sole business was an exclusive area agency for the distribution to certain retail stores of ladies' bags, jewelry and allied products, manufactured and advertised by a Massachusetts firm. Such agency rested in parol and was terminable at will, being based upon a personal and friendly relationship between decedent and the principals of the Massachusetts firm. Upon the death of the former, the latter made plain that the agency would be discontinued unless the widow remained in business as an active principal in which event the same arrangement had with decedent would be retained. The latter further made plainly evident that no such agency would be granted to a stranger, and that, if the widow decided not to remain as such principal, their firm would itself distribute its products. In view of the learned Surrogate's specific finding (which no one contests) that, at this juncture, the widow could not be compelled to continue the decedent's business, "as she was not a chattel of the corporation," there is no factual warrant for assuming, as does the dissenting memorandum, that the widow was then faced with a conflict of interests with respect to whether the business should be continued. The proof supports

the conclusion that, without her joinder, the right to continue the business was no longer available to the estate; and that at no cost to herself she personally *and she only* could have the exclusive agency which the decedent had theretofore enjoyed. Under these circumstances, since the corporation's business was essentially a sales agency, existing by reason of decedent's personal relationship and terminable at will, there was no accountable good will ascribable to the decedent's stock interest therein, despite the widow's later and profitable continuance of the enterprise on her own account under names similar to that of the corporation (*Matter of Leserman*, 145 Misc. 387, 388–389; *Matter of Nichols*, 120 Misc. 228, 229; *Matter of Bandler*, 172 Misc. 433, 433–434). Since the decedent did not own all, or substantially all of the shares of stock in the corporation, and since his will did not specifically empower the executors to continue the corporation's business (cf. *Matter of Stulman*, 146 Misc. 861), the disposition of his interest in the corporation was wholly a matter of business judgment on the part of the executors, and the advisability of any such disposition was not a question properly determinable by the Surrogate's Court (*Matter of Ebbets*, 139 Misc. 250; *Matter of Pulitzer*, 139 Misc. 575, affd. 237 App. Div. 808). Hence, the executors' failure to make application for the court's direction as to the disposition of the decedent's 38 shares of stock, under section 215 of the Surrogate's Court Act; and the executors' judgment to embark on their own plan of liquidation, under which such shares were deemed to be without good-will value, constituted no unauthorized assumption of authority on their part (*Matter of Pulitzer, supra*). Moreover, resort to said section 215, under settled case law, was available only in extraordinary circumstances, not here shown (*Matter of Bernstein*, 13 A D 2d 743; *Matter of Bourne*, 11 A D 2d 128; *Matter of Wolfensohn*, 138 N. Y. S. 2d 718; 3 Warren's Heaton, Surrogates' Courts [6th ed], § 251, par. 4, subd. [b], p. 290). With regard to item No. 2: Upon the record and upon the findings contained in the learned Surrogate's opinion, it appears that the executors and the widow have duly accounted for all of the assets of the corporation, in which the estate owned a 38/75th's interest, and which the widow took over on October 31, 1955, with one exception now discussed. It is undisputed that in November, 1955, in furtherance of her own enterprise as successor to the corporation, the widow acquired, at cost price, merchandise in the amount of $32,460.01. This merchandise consisted of a portion of the estate's unsold inventory on hand, listed in the inventory made October 31, 1955 pursuant to the executorial plan of liquidation. While approving the learned Surrogate's finding that presumably some of this merchandise was sold later at regular prices for the widow's own benefit, we note that the quantum of net profits derived therefrom is, not covered by any finding of fact, and is not separately capable of ascertainment, on the existing record. Under the circumstances, upon further hearings and supplemental accounting, the amount of such net profits, if any, should be fixed and determined, since the widow concedes in her main brief that this transaction " certainly constituted self-dealing," although contending that it was not of any economic benefit to her and was a favor to the estate because she could have purchased the same merchandise directly from the manufacturer at the same price, in which event the unsold inventory might have had to be sold at a loss under distress prices. We hold the widow's argument to be legally unavailing. In dealing with corporate property, an individual who acts both in the capacity of a director of the corporation and in the capacity of a fiduciary of an estate having a proprietary interest therein, is to be held fully accountable as an estate representative for failing to avoid " an irreconcilable conflict between self-interest and fiduciary responsibility " (*Matter of Hubbell*, 302 N. Y. 246, 259; *Matter of Tuttle*, 4 N Y 2d 159, 164;

*Matter of Horowitz,* 297 N. Y. 252, 258). With respect to item No. 3: The learned Surrogate surcharged the executors $9,462.96 as an improper prorata sales expense, not chargeable to the estate's share of the inventory. We hold that such surcharge should be reduced to $4,977.24, without the imposition of an interest penalty thereon. We agree with the learned Surrogate's conclusion that the salaries paid out during the liquidation period to the widow's personnel and to the widow herself, in amounts aggregating $14,630, were improper items of charge to the estate. After reducing the submitted total sales expense of $31,745.47 by the said sum of $14,630, we hold that the residual sum of $17,115.47 was an otherwise allowable and proper sales cost, including the charge of salesmen's commissions, in the amount of $9,642.74, therein contained. Since the residual $17,115.47 amounts to an approximate 7% ratio for cost of sales when measured on the total net sales of $214,975.48, the same 7% ratio of expense should be applied to the sales of the estate's share of the inventory which aggregated $64,081.79, thus fixing the amount of $4,977.24 as assessable to the estate. As so recalculated, the computation of salesmen's commissions ($9,642.74 on total sales of $214,975.48) does not exceed the 4½% rate of commissions which the learned Surrogate found to be the customary rate, usual in the trade. The decree to be entered in the Surrogate's Court, as hereinbefore indicated, should reflect the calculations above discussed. Kleinfeld, Acting P. J., Brennan and Rabin, JJ., concur; Christ and Hopkins, JJ., concur in part and dissent in part, as indicated in the following memorandum: We concur in the modifications of the decree which direct the executors to account for the net profits, if any, derived by the widow as a result of her acquisition of the estate's inventory, and which reduce the surcharge of the executors with respect to the amount deducted from the proceeds of sale of the estate's share of the inventory of the corporation, Max Tannenbaum & Co., Inc., from the sum of $9,462.96 to the sum of $4,977.24. We dissent from the modification of the decree which strikes out the surcharge of the executors in the sum of $71,400, representing the good-will value of the decedent's interest in the corporation, and vote to affirm the decree in this respect. In our opinion, the Surrogate had jurisdiction to entertain an application by the executors for instructions concerning the sale of the stock held by the estate in the corporation. The facts that (1) the stock was the majority interest in the corporation, (2) the nature of its business was the sale of the product of one manufacturer, (3) the widow, an executor, was placed in a dual capacity because she held the remaining stock interest in the corporation, and (4) the manufacturer had stated that the presence of the widow as an active director and officer of the corporation was essential to the continuance of the relationship which the manufacturer had enjoyed with the corporation, constituted extraordinary circumstances — indeed, a crisis — in the affairs of the estate, thus laying the foundation for an application to the Surrogate (*Matter of Bourne,* 11 A D 2d 128, affd. 8 N Y 2d 1041; *Matter of Bernstein,* 13 A D 2d 743; *Matter of Wolfensohn,* 138 N. Y. S. 2d 718). In any event, the Surrogate rightfully examined the conduct of the widow as an executor, since she was also an officer, director, and stockholder in a close corporation in which the estate was the majority stockholder (*Matter of Hubbell,* 302 N. Y. 246, 254; *Matter of Auditore,* 249 N. Y. 335; *Matter of Lagemann,* 178 Misc. 352, 355–356). In a direct sense, she was a partner in the operations of the business (cf. *Matter of Ostwald,* 20 Misc 2d 1001, 1006). Viewing her relationship in this setting, it is clear that she was charged with the highest duty known to the law in executing her duties as a fiduciary both of the estate and of the corporation (*Meinhard* v. *Salmon,* 249 N. Y. 458). She could not seize control of the business (*Frear* v. *Lewis,* 166 App. Div.

210), though her action may have been beneficial to the estate on the whole (*Matter of Ferrante*, 190 Misc. 788), nor could she depreciate the assets of the estate, including good will, for her own advantage (*Matter of Arnay*, 18 Misc 2d 266; *Matter of Offen*, 45 N. Y. S. 2d 348, 350). If a conflict arose between her own interests and the interests of the estate, her choice lay in only two directions: either to subordinate her individual interests to the estate's interests, or to resign (*Matter of Hubbell*, 302 N. Y. 246, 259, *supra*). The conflict did arise in this estate. The manufacturer did not terminate its relationship with the corporation; the Surrogate found on substantial evidence that it would have continued the relationship, if the widow had continued her active interest in the corporation (*Matter of Tannenbaum*, 30 Misc 2d 743, 746). When she chose to organize first her own business and then a corporation in which she held the entire stock interest, and to acquire for herself and her own corporation the business relationship with the manufacturer, she violated the strict duty of loyalty to the estate which the law imposes (see 2 Scott, Trusts [2d ed.], § 170.23, pp. 1269–1272; Annotations, 161 A. L. R. 1038; 144 A. L. R. 1013). Nor was she content to appropriate for herself the business relationship only. The Surrogate found on ample evidence that she conducted her individual and corporate business at the same premises, with the same facilities, telephone number and letterheads, and that she used the same customer lists which the original corporation (Max Tannenbaum & Co., Inc.) had possessed (*Matter of Tannenbaum*, *supra*, p. 748). These acts represented violations of her fiduciary duty to the corporation (Max Tannenbaum & Co., Inc.) for which she is accountable (cf. *Town & Country Serv.* v. *Newbery*, 3 N Y 2d 554; *Jones Co.* v. *Burke*, 306 N. Y. 172, 189).